The CENTER HILL DEFENSE FUND

v.

UNITED STATES ARMY CORPS OF ENGINEERS, NASHVILLE DISTRICT; Lt. Col. J. David Norwood, District Engineer for the Nashville District of the United States Army Corps of Engineers; Center Hill Marina and Yacht Club, Inc., now known as Cove Hollow Resort, Inc.; Gary and Carol Demik, Individually and d/b/a Hidden Harbor Marina at Holmes Creek; Cookeville Boat Dock & Resort, Inc.; and Sligo, Co., Inc.

No. 2:94–0065.

United States District Court,
M.D. Tennessee,
Northeastern Division.

May 9, 1995.

John Parker Branham and Donald Neil Capparella, Branham & Way, Nashville, TN, for plaintiff.

Wm. Lee Deneke, Asst. U.S. Atty., Nashville, TN, T. Eugene Jared, Cookeville, TN, and John K. Maddin, Maddin, Miller & McCune, Nashville, TN, for defendants.

## MEMORANDUM

MORTON, Senior District Judge.

## I. INTRODUCTION

This conflict arose after four private marinas began charging a $5 fee for use of their boat launching facilities at Center Hill Lake in May 1994. The marinas lease the property from the United States Army Corps of Engineers (the "Corps"). A group of boat owners brought suit against the Corps and the four marinas to put a stop to the user fees or, in the alternative, to limit the fee charged at the marinas to $3 per vehicle per day.

The plaintiff moved for judgment on the pleadings and all six defendants moved for summary judgment. This case is an appropriate one for disposition without trial in that its outcome essentially turns on interpretation of applicable federal law. Indeed, the court has the unenviable task of determining congressional intent. The central issue in this case is whether the Corps has authority

to permit its lessees to charge a $5 fee at boat launching facilities on leased property, while the Corps itself is permitted to charge only $3 at facilities it operates. Upon review of the facts and applicable law in this case, this court concludes that the Corps has such authority.

## II. FACTS AND APPLICABLE LAW

### A. *The Center Hill Project*

Center Hill Lake was originally built on federal land as a flood control measure pursuant to the Flood Control Act of 1938. Pub.L. No. 761, 52 Stat. 1215 (1938). As a water resource development project, Center Hill Lake was intended to fulfill primary purposes of flood control and hydropower. Public recreation was not a congressional priority until 1944.

Through the Flood Control Act of 1944 and other legislation,[1] Congress authorized the development of public recreation at water resource projects. The Corps is charged with the administration of federally-owned lands surrounding water resource development projects, including Center Hill. Accordingly, for the last 50 years, the Corps has administered its projects in order to foster and promote public recreational opportunities.

Because much of the natural shoreline of Center Hill lake is too steep for development or shoreline activities such as swimming, picnicking or camping, the Corps developed several public access areas to the lake. The Corps built roads and boat ramps for lake access, then leased some of the property to private businesses who now operate the facilities as part of their concession operations.

Today, numerous recreational developments exist on the lake. Facilities have been constructed by the Corps, private entities, state and local governments and quasi-public interests. Developments include eight marinas, several Corps-operated recreation areas that offer lake access, and two state parks.

### B. *The Concession Leases*

Pursuant to 16 U.S.C. § 460d, the Corps may lease federally-owned land at water resource development projects to state or local governments, charitable groups, or private businesses. Section 460d states, in pertinent part:

**§ 460d. Construction and operation of public parks and recreational facilities in water resource development projects; lease of lands; preference for use; penalty; application of section 3401 of Title 18; citations and arrests with and without process; limitations; disposition of receipts.**

The Chief of Engineers, under the supervision of the Secretary of the Army, is authorized to construct, maintain, and operate public park and recreational facilities at water resource development projects under the control of the Department of the Army, to permit the construction of such facilities by local interests (particularly those to be operated and maintained by such interests), and to permit the maintenance and operation of such facilities by local interests. *The Secretary of the Army is also authorized to grant leases of lands, including structures or facilities thereon, at water resource development projects for such periods, and upon such terms and for such purposes as he may deem reasonable in the public interest:* Provided, That leases to nonprofit organizations for park or recreational purposes may be granted at reduced or nominal considerations in recognition of the public service to be rendered in utilizing the leased premises; *Provided further,* That preference shall be given to Federal, State or local governmental agencies, and licenses or leases where appropriate, may be granted without monetary considerations, to such agencies for the use of all or any portion of a project area for any public purpose, when the Secretary of the Army determines such action to be in the public interest, and for such periods of time and upon such conditions as he may find advisable: ...

---

1. *Flood Control Act of 1944,* § 4, 16 U.S.C.A. § 460d (1944); *Fish and Wildlife Coordination Act of 1934,* 16 U.S.C. 661 (1934) (amended 1946, 1948, 1958 and 1965); *Federal Water Project Recreation Act of 1964,* 16 U.S.C. § 460l–5 (1965).

The water areas of all such projects shall be open to public use generally for boating, swimming, bathing, fishing, and other recreational purposes, and ready access to and exit from such areas along the shores of such projects shall be maintained for general public use, when such use is determined by the Secretary of the Army not to be contrary to the public interest. . . .

16 U.S.C. § 460d (1993) (emphasis added).

Each of the four private marinas in this case operates its facilities pursuant to a lease agreement with the Corps. Generally, the Corps granted the lessees the right to conduct concession business on the property in exchange for consideration. None of the leases permit the lessees to charge user fees.[2]

## C. Congress's pre–1993 Attitude Toward User Fees

### 1. 1944–1965

When Congress first devoted water resource development projects such as Center Hill Lake to public recreation, it did not have boat launching fees in mind. 16 U.S.C. § 460d (1944). The original language of the Flood Control Act of 1944 mandated that the "water areas of all such projects shall be open to public use generally *without charge*. . . ." 16 U.S.C. § 460d (1944). Prior to 1964, neither the Corps nor others were allowed to charge boat launch fees for facilities at Center Hill Lake.

### 2. 1965–1968

In the mid–1960s, however, Congress passed the Land and Water Conservation Fund Act of 1965 (hereinafter, the "1965 Act"), which created a system for charging fees at publicly-owned recreation facilities, including those owned by the Corps. 16 U.S.C. 460*l* (1965). The 1965 Act authorized the President to designate federal areas at which entrance fees, admission fees and other forms of user fees would be charged. 16

U.S.C. § 460*l* (1965). The 1965 Act also amended the Flood Control Act of 1944 by deleting the words "without charge" from the statute. 16 U.S.C. § 460d (1964).

In implementing the fee system, Congress noted that the "pay to play" idea was not new, but rather "in complete accord with American tradition of full and fair payment for value received." Sen.Rep. No. 1364, 88th Cong., 2d Sess. 14 (1964), reprinted 1964 U.S.C.C.A.N. 3633, 3646. Indeed, in 1964, Congress estimated admission and user fees paid by persons who used outdoor recreation areas provided by the federal government to be around $6 million a year. *Id.* at 3634. Congress recognized its longstanding policy that where use of federal resources conveys special benefits on a few people above and beyond the benefits enjoyed by the average taxpayer, then the identified recipients should pay for such use. Sen.Rep. No. 1364, 88th Cong., 2d Sess. 14 (1964), reprinted 1964 U.S.C.C.A.N. 3646, 3647. It stated:

Federal recreation areas have been acquired or developed for the most part from funds appropriated out of the general tax revenues to the U.S. Treasury. People who use these areas receive special benefits which do not accrue to the public at large. In fairness to the general taxpayer, who carries the major burden of support for these areas, the recipient of these special benefits—the people who use the areas for recreation purposes—should pay a modest fee for the resources used.

*Id.* This legislative history clearly illustrates a congressional attitude that those who use a recreational facility should pay for the special benefits they reap from that facility.

Also evident in the legislative history leading up to the passage of the 1965 Act is Congress's intent that its fee system *not* apply to lessees. The Senate report states:

---

2. The Corps' contracts with Sligo, Co., Inc., Cookeville Boat Dock & Resort, Inc. and Hidden Harbor Marina at Holmes Creek specifically state that "no user fees may be charged . . . for use of facilities developed in whole or in part with federal funds if prohibited by 16 U.S.C. § 460*l*–6a(b)." (¶ 9(b), p. 6). The lease between the Corps and Center Hill Marina and Yacht Club, Inc. does not contain the specific prohibition. However, that lease states that "no attempt shall be made by the Lessee to forbid the full and free use by the public of the water areas of the project." (¶ 16, p. 7). All parties agree that the lessees were forbidden to charge user fees at their boat launching facilities.

User fees.—In addition, the bill would provide for charges in some instances for the use of areas, special facilities, equipment, or services provided and operated by a Federal agency especially for the benefit of the recreationist. For example, a fee might be charged for the use of a well-developed campsite, a bathhouse, firewood or electricity, or boat ramp if developed and maintained with Federal funds.

Also, *the committee does not intend any prohibition upon the charging of fees to apply to State, private, or other non-federal entities.*

*The authority that now exists or may later be granted for lessees, concessionaires, or licensees of the Federal Government to charge fees in relation to facilities or services furnished or operated by them is unaffected by this bill* as is the authority of State and local governments.

Sen.Rep. No. 1364, 88th Cong., 2d Sess. 14 (1964), reprinted 1964 U.S.C.C.A.N. 3647, 3648 (emphasis added). Further, the Conference Report submitted with the 1965 Act states, in pertinent part:

It also recommends a further amendment to the sentence to which this last amendment was appended to make clear that the prohibition against charging fees for the use of waters applies only to Federal agencies. This last will obviate difficulties which have been encountered under other legislation (for example, sec. 4 of the act of Dec. 24, 1944, as amended, 16 U.S.C. § 460d) pursuant to which Federal agencies have thought it necessary, even though recreation developments were turned over to State or local bodies to administer, to prohibit the charging of fees by these bodies.

Conf. Rep. No. 1847, 88th Cong., 2nd Sess. 15, reprinted 1964 U.S.C.C.A.N. 3633, 3660 (1964).

This legislative history, while some 30 years old, is revealing. When Congress endorsed a fee system in 1965, it intended the fee system to apply only to federal agencies. Congress recognized that federal agencies could misinterpret the legislation as a limitation on what they could permit their lessees to do. In its conference report, Congress made clear that, in implementing a fee system, it was only speaking to federal agencies. It was not in any way attempting to regulate the activities of local bodies to whom the federal agency had leased the operation of recreational facilities.

*3. 1968–1993*

In 1968, Congress largely repealed the user fee system it had authorized in the 1965 Act. Congress recognized that the fee system under the 1965 Act had generated controversy and public opposition. Sen.Rep. No. 1071, 90th Cong., 2nd Sess. (1968), reprinted at 1968 U.S.C.C.A.N. 2613, 2620–21.

In order to withdraw from the fee system it had created in 1965, Congress enacted 16 U.S.C. § 460d–3, which limited fees charged at water resource development projects to "highly developed" facilities. The original § 460d–3 stated:

**§ 460d–3. Entrance or admission fees; user fees.**

No entrance or admission fees shall be collected after March 31, 1970, by any officer or employee of the United States at public recreation areas located at lakes and reservoirs under the jurisdiction of the Corps of Engineers, United States Army. User fees at these lakes and reservoirs shall be collected by officers and employees of the United States only from users of highly developed facilities requiring continuous presence of personnel for maintenance and supervision of the facilities, and *shall not be collected for access to or use of* water areas, undeveloped or lightly developed shoreland, picnic grounds, overlook sites, scenic drives, or *boat launching ramps where no mechanical or hydraulic equipment is provided.*

16 U.S.C. § 460d–3 (1968) (emphasis added). Congress also amended the 1965 Act, largely codified at 16 U.S.C. § 460l–6a, to reflect its retreat. The Act was amended to explicitly forbid Federal agencies from charging boat launching fees except at specialized facilities. 16 U.S.C. § 460l–6a(b) (1965), as amended. That section stated, in pertinent part:

**(b) Recreation use fees; collection; campgrounds at lakes or reservoirs under jurisdiction of Corps of Engi-**

**neers; fees for Golden Age Passport permittees**

Each Federal agency developing, administering, providing or furnishing at Federal expense, specialized outdoor recreation sites, facilities, equipment, or services shall ... provide for the collection of daily recreation use fees at the place of use or any reasonably convenient location: *Provided,* That in no event shall there be a charge by any such agency for the use, either singly or in any combination, of drinking water, wayside exhibits, roads, overlook sites, visitors' centers, scenic drives, toilet facilities, picnic tables or boat ramps: *Provided, however,* That *a fee shall be charged for boat launching facilities only where specialized facilities or services such as mechanical or hydraulic boat lifts or facilities are provided....*

16 U.S.C. § 460*l*–6a(b) (1965) (emphasis added).

By the mid–1960s, Congress recognized that the subject of user fees was controversial. At the same time Congress retracted from the user fees it had endorsed in 1965, it recognized the need to take a hard look at the dispute that had arisen over user fees. The Senate Committee stated:

In view of the disagreements as to the facts and the controversy as to the policy, the committee believes the entire fee system under the act should be the subject of comprehensive [legislative] review.

Sen.Rep. No. 1071, 90th Cong., 2nd Sess. (1968), reprinted at 1968 U.S.C.C.A.N. 2621.

**D.** *The Corps' pre–1993 Approach to User Fees*

Prior to 1993, in keeping with legislative mandates, the Corps did not collect user fees for boat launching facilities it operated at Center Hill Lake. Furthermore, the Corps did not permit its concessionaire lessees to charge fees at facilities they operated. It is noteworthy that the Corps argues today that it always had the authority to permit lessees to charge user fees pursuant to its leasing authority under 16 U.S.C. § 460d, but simply chose not to permit it. As a matter of policy, prior to 1993, the Corps did not allow lessees

to charge fees for facilities for which the Corps itself could not charge.

An October 15, 1993 memorandum issued by the Corps illustrates the Corps' understanding of its authority to permit lessees to charge fees prior to 1993. The Corps stated:

In 1986, we furnished you a legal opinion which addressed the question as to whether a state, local entity or private lessee could collect user fees for facilities developed in whole or in part with Federal funds in instances where the Corps would be prohibited from collecting user fees under 16 U.S.C. § 460*l*–6a(b). *The legal opinion concluded that state, local entity and private lessees do not have any greater rights than the Corps where the facilities are wholly or partially federally funded.*

*Memorandum for Major Subordinate Commands and District Commands,* Defendant's Ex. D (emphasis added). The Corps' position in this litigation, that it always had the authority to permit lessees to charge user fees under § 460d despite § 460*l*–6a(b), seems inconsistent with this memorandum.

**E.** *The Omnibus Budget Reconciliation Act of 1993*

In 1993, through the Omnibus Budget Reconciliation Act of 1993 (hereinafter "1993 Act"), Congress again changed its position with regard to user fees at boat launching facilities. Section 5001(a) of the Act amended Section 210 of the Flood Control Act of 1968 (16 U.S.C. § 460d–3), and Section 10001 amended the Land and Water Conservation Fund Act of 1965 (16 U.S.C. § 460*l*–6a). The amendments had the effect of authorizing the Corps to charge use fees for boat launching facilities at Center Hill Lake.

Specifically, Section 460d–3, which previously limited user fees to highly developed areas, was completely overhauled by the 1993 Act. The new statute reads:

**§ 460d–3. Recreational user fees**

**(a) Prohibition on admissions fees**

No entrance or admission fees shall be collected after March 31, 1970, by any officer or employee of the United States at Public recreation areas located at lakes

and reservoirs under the jurisdiction of the Corps of Engineers, United States Army.

**(b) Fees for use of developed recreation sites and facilities**

**(1) Establishment and collection**

Notwithstanding section 460*l*–6a(b) of this title, the Secretary of the Army is authorized, subject to paragraphs (2) and (3), to establish and collect fees for the use of developed recreation sites and facilities, including campsites, swimming beaches, and boat launching ramps but excluding a site or facility which includes only a boat launch ramp and a courtesy dock.

**(2) Exemption of certain facilities**

The Secretary shall not establish or collect fees under this subsection for the use or provision of drinking water, wayside exhibits, roads, scenic drives, overlook sites, picnic tables, toilet facilities, surface water areas, undeveloped or lightly developed shoreland, or general visitor information.

**(3) Per vehicle limit**

The fee under this subsection for use of a site or facility (other than an overnight camping site or facility or any other site or facility at which a fee is charged for use of the site or facility as of August 10, 1993) for persons entering the site or facility by private, noncommercial vehicle transporting not more than 8 persons (including the driver) shall not exceed $3 per day per vehicle. Such maximum amount may be adjusted

annually by the Secretary for changes in the Consumer Price Index of All Urban Consumers published by the Bureau of Labor Statistics of the Department of Labor.

**(4) Deposit into Treasury account**

All fees collected under this subsection shall be deposited into the Treasury account for the Corps of Engineers established by section 460*l*–6a(i) of this title.

16 U.S.C. § 460d–3 (1993) (West 1995 Supp.).[3] As a result of the 1993 Act, the Corps is permitted to charge a fee for public use of its boat launch ramps. The maximum fee that the Corps can charge is $3 per day per vehicle. 16 U.S.C. § 460d–3(b)(3).

**F. *The Dispute***

Soon after the enactment of the 1993 Act, the Corps circulated a memorandum stating "the law enlarges the spectrum of fees which the Corps may now charge and thus the lessee could now charge similarly." *Memorandum for Major Subordinate Commands and District Commands*, October 15, 1993, Defendant's Ex. D. Indeed, on June 8, 1994, the Corps started charging a $2 launching fee at three recreation areas it operates and maintains. The fees collected at the Corps-operated facilities are deposited into the Corps' treasury account pursuant to 16 U.S.C. § 460d–3(b)(4).

On April 12, 1994, the Corps notified the lessee concessionaires that they could begin charging a boat launching fee. The letter

---

**3.** Congress also amended § 460*l*–6a(b) to coincide with § 460d–3 by expanding the definition of "specialized outdoor recreation sites" to include boat launch facilities. The latest § 460*l*–6a(b) states, in pertinent part:

> **(b) Recreation use fees; collection; campgrounds at lakes or reservoirs under jurisdiction of Corps of Engineers; fees for Golden Age Passport permittees**
>
> Each Federal agency developing, administering, providing or furnishing at Federal expense, specialized outdoor recreation sites, facilities, equipment, or services shall ... provide for the collection of daily recreation use fees at the place of use or any reasonably convenient location: *Provided*, That in no event shall there be a charge by any such agency for the use, either singly or in any combination, of drinking water, wayside exhibits, roads, over-

look sites, visitors' centers, scenic drives, or toilet facilities, nor shall there be any such charge solely for the use of picnic tables. *Provided*, That in no event shall there be a charge for the use of any campground not having a majority of the following: tent or trailer spaces, picnic tables, drinking water, access road, refuse containers, toilet facilities, personal collection of the fee by an employee or agent of the Federal agency operating the facility, reasonable visitor protection, and simple devices for containing a campfire (where campfires are permitted). *For the purposes of this subsection, the term "specialized outdoor recreation sites" includes, but is not limited to, campgrounds, swimming sites, boat launch facilities, and managed parking lots.*
> 16 U.S.C.A. § 460*l*–6a(b) (West 1995 Supp.) (emphasis added).

informed the lessees that if they wished to initiate such a fee, they would also be required to assume the maintenance of the ramps, roads and parking lots. Also, the Corps warned the lessees that any fee charged must be reasonable. No formal supplements to the leases were issued by the Corps.

The four defendant marinas decided on a $5 launching fee, and the Corps determined the fee to be reasonable. With the Corps' blessing, the four marinas started charging a $5 launching fee a few days before Memorial Day weekend 1994. None of the fees collected at the private marinas are deposited into the Corps' Treasury account. Rather, the private business owners keep the fees they collect and use them to maintain and improve their facilities.

The plaintiff filed this lawsuit on August 25, 1994. The plaintiff is an organization comprised of hundreds of members who regularly use the boat launching facilities on Center Hill Lake. One purpose of the organization is to preserve lake access for its members.

In support of standing, the organization filed the affidavit of Frances C. Neal, an individual member of the Center Hill Defense Fund. Ms. Neal was once a regular user of the boat launching ramps at the marinas, but has been forced to discontinue her use of those facilities. Ms. Neal states she has suffered direct financial injury because of the increased cost of recreation via the defendants' marinas. She states further that she faces future injury if the fees are allowed to continue. In sum, Ms. Neal avers:

> The actions of the Corps in allowing private marinas to charge and collect fees has directly injured and will continue to injure me and other members of the Center Hill Defense Fund, by erecting a financial barrier to my recreational use of the lake, and the recreational use of the lake by all members of the Center Hill Defense Fund.

*Affidavit of Frances C. Neal,* ¶ 6.

The positions of the parties can be summarized as follows. Plaintiff argues that be-

cause the 1993 Act expressly allows only the *Corps* to charge fees, the lessees may charge no fees whatsoever. Alternatively, the plaintiff argues that the lessees can charge no more than the Corps could otherwise charge, that is, a maximum of $3 per vehicle per day. Finally, the plaintiff argues that all fees that the marinas collect must be deposited in the U.S. Treasury account and not their own pockets. 16 U.S.C. § 460d–3(b)(4); § 460*l*–6a(i) (1994).

The Corps argues that § 460d–3 only limits boat launching fees at Corps-operated facilities, and does not limit what can be charged at lessee-operated facilities. The Corps insists it has authority under 16 U.S.C. § 460d to permit the lessees to do anything reasonable and in the public interest, irrespective of the limitations § 460d–3 (1993) puts on the Corps. The Corps also argues that the plaintiff lacks standing to challenge (1) the fees charged at the marinas, and (2) the fact that fees collected are not being deposited in the U.S. Treasury account, as required by 16 U.S.C. § 460d–3(b)(4); § 460*l*–6a(1) (1994).

The four private marinas argue that they are not proper parties to this dispute. They state that they charge launch fees because their landlord, the Corps, gave them permission. Further, the marinas state that they owe no duty to plaintiff. Finally, the marinas say their presence in this lawsuit is unnecessary because "only if the plaintiff is successful in nullifying the Corps' action will the interests of the Lessees ripen in this matter."[4] Namely, the Corps will have breached the contracts it has with each lessee to whom it gave permission to charge a fee in exchange for maintaining the ramps, roads and parking lots.

## III. STANDARD OF REVIEW

The court will view plaintiff's motion for judgment on the pleadings as one for summary judgment under Rule 56, because the

---

4. This argument is without merit. The plaintiff seeks an injunction against the marinas ordering them to cease charging launch fees. Therefore,

should the plaintiff prevail, the marinas are necessary parties without whom complete relief could not be granted. Fed.R.Civ.P. 19 (1995).

court has considered matters outside the pleadings. Fed.R.Civ.P. 12(c) (West 1995).

The standard governing the decision on a motion for summary judgment is well established. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Moreover, a dispute about a material fact is "genuine" within the meaning of Fed. R.Civ.P. 56 only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *White v. Turfway Park Racing Assn., Inc.*, 909 F.2d 941, 943–44 (6th Cir.1990).

A party may prevail on summary judgment by prevailing on a pure question of law. *Watkins v. Shared Hosp. Services Corp.*, 852 F.Supp. 640, 643 (M.D.Tenn.1994).

In this case, there are no material facts in dispute. All parties agree that summary disposition is appropriate.

## IV. DISCUSSION

### A. *Standing*

#### 1. *Generally*

■ A preliminary inquiry before the court is whether plaintiff, an organization made up of regular users of the boat launch facilities at Center Lake, has standing to sue. At a minimum, Article III requires a plaintiff to show (1) he has suffered some actual or threatened injury; (2) the injury can fairly

be traced to the challenged action; and (3) the injury is likely to be redressed by a favorable decision. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). In addition to Art. III requirements, a plaintiff's interest must come within the "zone of interests" protected or regulated by the law in question. *Association of Data Processing Serv. Organizations v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 829–30, 25 L.Ed.2d 184 (1970). The court will not hear "generalized grievances" shared by all citizens. *United States v. Richardson*, 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974); *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974).

■ An organization may sue on behalf of its members if (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are related to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Hunt v. Washington State Apple Advertising Comm.*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977).

#### 2. *Center Hill Defense Fund has standing to challenge collection of fees*

■ The plaintiff has standing to challenge the Corps' authority to permit its lessees to charge any fee or, alternatively, fees in excess of $3 per vehicle per day. First, plaintiff's members would have standing to sue in their own right. Plaintiff is an organization whose members regularly use the boat launch facilities at Center Hill Lake. It has pled an actual, economic injury, namely, that its members must pay for lake access that used to be free at the defendants' facilities.[5] The injury can be traced to the conduct of the defendants and would be redressed by a decision that the marinas may not charge fees. *Valley Forge Christian College v. Americans United for Separation of Church*

---

5. It is of little import that access to Center Hill Lake remains free at other docks. Being forced to drive a longer distance to launch one's boat also amounts to a concrete injury.

*and State, Inc.,* 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).

Second, the interests plaintiff seeks to protect are related to the organization's purpose. One of the organization's purposes is to preserve access to the lake for its members. Finally, neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. Therefore, plaintiff has standing to challenge the fees currently being charged at the defendants' facilities. *Hunt v. Washington State Apple Advertising Comm.,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977).

*3. Plaintiff lacks standing to sue to enforce compliance with 16 U.S.C. § 460l–6a(i)*

■ In its complaint, plaintiff also asks the court to force the lessees to deposit the fees they collect in the U.S. Treasury account, as required by law. 16 U.S.C. § 460d–3(b)(4); § 460l–6a(i) (1994). In this regard, plaintiff's status is nothing more than that of a group of taxpayers.

Generally, a federal taxpayer has no standing to challenge how the government collects and spends its funds because his relationship to the lawsuit is remote. The Supreme Court explained:

> His interest in the moneys of the Treasury—partly realized from taxation and partly from other sources—is shared with millions of others; is comparatively minute and indeterminable; and the effect upon future taxation, of any payment out of the funds, so remote, fluctuating and uncertain, that no basis is afforded for an appeal to the preventive powers of a court of equity.

*Frothingham v. Mellon,* 262 U.S. 447, 487, 43 S.Ct. 597, 601, 67 L.Ed. 1078 (1923).

More importantly, assuming the defendants have authority to charge fees, the plaintiff has not shown how it has suffered injury as a result of the private marinas' failure to deposit the fees they collect with the U.S. Treasury. The lessees use the fees they collect to maintain and improve their facilities. *See Affidavits of Reece Nash, Gary DeMik and Joe A. Thorne, Exhibits to Defendant Marinas Motion for Summary Judgment.* Plaintiff has failed to illustrate

an "injury in fact" as a result of the marinas' lack of accounting to the U.S. Treasury. Therefore, plaintiff has no standing to challenge the defendants' failure to deposit the user fees into the Treasury account. 16 U.S.C. § 460d–3(b)(4); § 460l–6a(i) (1994).

**B.  *The Rule of Chevron***

[6, 7]  The court next focuses on the legality of the $5 boat launch fee currently charged at the four defendant marinas. At the outset, it is important to note that the court has a limited role in reviewing the legitimacy of the Corps' actions in this case. *Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In *Chevron,* the Supreme Court set forth the appropriate standard of review when a court reviews an agency's construction of a statute. 467 U.S. at 842, 104 S.Ct. at 2781. The Court stated:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter, for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

467 U.S. at 842–43, 104 S.Ct. at 2781–82. This rule of deference applies not only to an agency's interpretation of statutes it is charged with administering, but also to an agency's interpretation of its own statutory authority. *Mississippi Power & Light Co. v. Mississippi ex rel. Moore,* 487 U.S. 354, 381, 108 S.Ct. 2428, 2444, 101 L.Ed.2d 322 (1988) (Scalia, J., concurring). The rationale for deference is rooted in separation of powers. In *Mississippi Power & Light Co.,* Justice Scalia explained this rationale:

Congress would naturally expect that the agency would be responsible, within broad limits, for resolving ambiguities in its statutory authority or jurisdiction. Congress would neither anticipate nor desire that every ambiguity in statutory authority would be addressed, de novo, by the courts.

487 U.S. at 381–82, 108 S.Ct. at 2444.

The rule in *Chevron* makes clear that a court may not substitute its judgment for that of an agency whose action is based on a permissible construction of the statute. The court must uphold an agency's reasonable interpretation of a statute, even if there is more than one permissible statutory construction, and even if the court would have interpreted the statute differently if the question had arisen initially in a judicial proceeding. *FEC v. Democratic Senatorial Campaign Committee*, 454 U.S. 27, 32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981).

In light of the two-part inquiry set forth in *Chevron*, the court must first decide whether Congress has "directly spoken to the precise question at issue" in this case. *Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). If congressional intent is clear, then both the Corps and the court must obey it. *Id.* at 842–43, 104 S.Ct. at 2781–82.

### C. *Intent of Congress is Unclear*

The "precise question at issue" in this case is whether Congress meant for the 1993 Act to be a restriction on the Corps' leasing power under 16 U.S.C. § 460d (1944). Upon review of the 1993 Act and its accompanying legislative history, it is unclear whether Congress intended the 1993 Act to be a restriction on the Corps' leasing power.

Section 460d–3 (the 1993 Act) provides that the Secretary of the Army may establish and collect user fees at developed recreational sites, including boat launching ramps. 16 U.S.C. § 460d–3(b)(1) (1993). Such fee should not exceed $3 per day per vehicle. 16 U.S.C. § 460d–3(b)(3) (1993).

A review of the plain language of § 460d–3 leaves the reader with two plausible interpretations, those adopted by the parties in this case. Plaintiff argues that, because Congress authorized only the Corps to charge fees, private entities may not charge fees under the statute. Alternatively, plaintiff argues that § 460d–3 impliedly limits what the Corps can permit its lessees to charge with its leasing power under § 460d, because the Corps cannot grant the lessees permission to charge more than it could charge. Defendants argue that § 460d–3 speaks only about *Corps-operated* facilities and was not intended to limit user fees at facilities operated by private entities. The 1993 Act could mean either (1) the Corps is the only one limited to $3, or (2) the Corps is only one who can charge at all, and is limited to $3. Either interpretation would be a logical construction of the statute.

Section 460d–3 was enacted as part of the Omnibus Budget Reconciliation Act of 1993. There is no legislative history behind that Act that is helpful, much less that reveals the "unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842–43, 104 S.Ct. at 2781–82. Therefore, because Congress did not address the "precise question in issue," the court next must determine whether the Corps' interpretation is based on a permissible construction of the statute. *Id.*

### D. *The Corps' Statutory Interpretation is Reasonable*

The Corps' position that § 460d–3 in no way limits its leasing power under § 460d is based on a permissible construction of the statutes. While there is no helpful legislative history that accompanies the 1993 Act, committee reports in support of the Land and Water Conservation Act of 1965 provide guidance.

The 1965 Act provided that federal agencies who administered specialized outdoor recreation sites "shall ... provide for the collection of daily recreation use fees at the place of use or any reasonably convenient location." 16 U.S.C. § 460*l*–6a(b). Like the 1993 Act, the 1965 Act only addressed federal agencies, and made no mention of private entities operating facilities leased from an agency.

The legislative history behind the 1965 Act makes clear that Congress did not intend the statute to apply to private lessees. The Senate report states:

User fees.—In addition, the bill would provide for charges in some instances for the use of areas, special facilities, equipment, or services provided and operated by a Federal agency especially for the benefit of the recreationist. For example, a fee might be charged for the use of a well-developed campsite, a bathhouse, firewood or electricity, or boat ramp if developed and maintained with Federal funds.

Also, *the committee does not intend any prohibition upon the charging of fees to apply to State, private, or other non-federal entities.*

*The authority that now exists or may later be granted for lessees, concessionaires, or licensees of the Federal Government to charge fees in relation to facilities or services furnished or operated by them is unaffected by this bill* as is the authority of State and local governments.

Sen.Rep. No. 1364, 88th Cong., 2d Sess. 14 (1964), reprinted 1964 U.S.C.C.A.N. 3647, 3648 (emphasis added). Further, the Conference Report submitted with the 1965 Act states, in pertinent part:

It also recommends a further amendment to the sentence to which this last amendment was appended to make clear that the prohibition against charging fees for the use of waters applies only to Federal agencies. This last will obviate difficulties which have been encountered under other legislation (for example, sec. 4 of the act of Dec. 24, 1944, as amended, 16 U.S.C. § 460d) pursuant to which Federal agencies have thought it necessary, even though recreation developments were turned over to State or local bodies to administer, to prohibit the charging of fees by these bodies.

Conf. Rep. No. 1847, 88th Cong., 2nd Sess. 15, reprinted 1964 U.S.C.C.A.N. 3660 (1964).

This legislative history is revealing. When Congress endorsed a fee system in 1965, it was addressing only federal agencies. It specifically stated that the bill was not intended to affect the authority of lessees who

operated facilities leased from federal agencies.

One can permissibly draw the same conclusion from the 1993 Act. In section 460d–3, Congress addresses only *Corps-operated* facilities. The Corps' position is that, much like in 1965, Congress did not intend to limit "the authority that now exists or may later be granted for lessees ... of the Federal Government to charge fees in relation to facilities or services furnished or operated by them." Sen.Rep. No. 1364, 88th Cong., 2d Sess. 14 (1964), reprinted 1964 U.S.C.C.A.N. 3647. Such an assumption, in absence of any indication to the contrary, is a permissible construction of the statute.

Therefore, the court finds that 16 U.S.C. § 460d–3 does not limit the Corps' ability to permit its lessees to charge use fees that the Corps deems "reasonable in the public interest" under 16 U.S.C. § 460d. Next, the court turns to whether $5 is a reasonable fee.

### E. *$5 is a reasonable fee*

■ The lease between the Corps and each lessee provides:

The rates and prices charged by the Lessee or its sublessees shall be reasonable and comparable to rates charged for similar goods and services by others in the area. The District Engineer shall have the right to review such rates and prices and require an increase or reduction when it has determined that the object of this paragraph has been violated.

¶ 9, *Ex. B to Corps' Memorandum in Support of its Motion for Summary Judgment.* Pursuant to this clause, the $5 fee charged by each defendant lessee was reviewed and approved by the Chief of the Management and Disposal Branch, Real Estate Division, Nashville District, U.S. Army Corps of Engineers.

In its review process, the Corps researched fees charged by other entities and discovered that the average launching fee was between $2 and $5, and some entities charged as much as $10.[6] Based upon its review, the Corps determined $5 to be "rea-

---

**6.** On Lake of the Ozarks in central Missouri, for example, a boat owner can expect to pay $5 to put his boat in the lake and $5 to get his boat out

of the lake. *Ex. G to Corps' Memo. in Support of Summary Judgment.*

sonable" within the meaning of the individual leases and 16 U.S.C. § 460d (stating Corps may grant leases upon such terms as it deems "reasonable" in the public interest).

The Corps' determination that $5 is a reasonable fee deserves deference. *Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Congress entrusted the Corps to enter into leases "upon such terms and for such purposes as [it] may deem reasonable in the public interest." 16 U.S.C. § 460d. Considerable weight should be accorded to the Corps' construction of the statute that it is entrusted to administer, and the court may not substitute its judgment for a reasonable decision made by the Corps. *Id.* Therefore, the court finds $5 to be reasonable.

### F. *The Impact of Agency Law*

The Court recognizes that its decision today is inconsistent with established agency law doctrine. When a boat launching facility is in the hands of the Corps, the Corps may only charge a $3 fee. 16 U.S.C. § 460d–3 (1993). However, the Corps can circumvent the $3 cap by simply leasing the property. The court has determined that the lessee may charge $5, $10, $15, or any fee that the landlord deems "reasonable." 16 U.S.C. § 460d. The practical result of these statutory interpretations is that the landlord can give more power to the tenant than the landlord otherwise would have if he operated the property himself.

It is axiomatic that an agent's authority can be no greater than the authority of his principal. As a general rule, "whatever a man may do of himself he may do through an agent, and what he himself cannot do he cannot authorize another to do for him." *Agency §§ 25, 144 Corpus Juris Secundum; see generally American Standard Credit v. National Cement,* 643 F.2d 248 (5th Cir. 1981); *United States v. Forbes,* 515 F.2d 676 (D.C.Cir.1975); *Phillips Petroleum Co. v. Haslem,* 218 F.2d 926 (10th Cir.1954); *In re Peters' Estate,* 336 N.Y.S.2d 712, 71 Misc.2d 662 (1972). Simply put, a man cannot give away three eggs if he only has two. Yet, today the court holds that the Corps can permit its lessees to charge $5 when the Corps itself can only charge $3.

If Congress did not intend this inconsistency, it could have expressly limited the Corps' leasing power under 16 U.S.C. § 460d when it passed the 1993 Act. Alternatively, it could have made clear that the $3 maximum fee set forth in 16 U.S.C. § 460d–3 applied to all boat launch facilities on federally-owned land surrounding water resource development projects, regardless of who operated the facilities. Congress's failure to do either of these things leaves the Corps with very broad leasing power, power it has had since 1944, irrespective of the limitations the 1993 Act puts on the Corps. It is up to Congress, not the courts, to correct this situation.[7]

### V. CONCLUSION

For the reasons set forth above, the court holds the Corps may permit its lessees to charge a $5 boat launch fee at their facilities pursuant to the Corps' leasing authority under 16 U.S.C. § 460d. Further, the court finds $5 to be reasonable. Finally, the lessees are not required to deposit the fees they collect into the U.S. Treasury account, be-

---

7. There are indications that the 1993 Act's days may be numbered. On August 4, 1994, Congress published a conference report while making appropriations for energy and water development for the fiscal year ending September 30, 1995. In it, Congress recognized the confusion it had created after the passage of the 1993 Act. The Conference Report states:

> The conferees have learned that certain private lessees who operate boat launching facilities constructed by the Corps of Engineers are charging fees for the use of those facilities which exceed the fees being charged by the Corps for the use of similar facilities.
>
> The conferees are concerned that this difference in fees charged for the use of similar

facilities, all of which were constructed by the Corps of Engineers with the taxpayers' money, is causing a great deal of confusion among the public. Therefore, the conferees direct the Secretary of the Army to take whatever steps are possible to ensure that fees charged by the private lessees for the use of boat launching facilities constructed by the Corps of Engineers do not exceed those charged by the Corps for the use of similar facilities.

*Conference Rep. No. 103–672* (1994).

Also, on January 4, 1995, a bill was introduced in the House to rescind the 1993 Act and replace it with the old version of § 460d–3 (no user fees except at highly developed areas). 104 H.R. 239 (1995).

cause the plaintiff lacks standing to enforce compliance with 16 U.S.C. § 460d–3(b)(4); § 460*l*–6a(i) (1994). Therefore, the defendants' motions for summary judgment are granted. The plaintiff's motion for judgment on the pleadings is denied. An appropriate order will be entered.