2012 Ark. 165

**Michael Leonard MILLER, Appellant**

v.

**ARKANSAS DEPARTMENT OF FINANCE AND ADMINISTRATION, Richard Weiss, Director, Appellee.**

No. 11–879.

Supreme Court of Arkansas.

April 19, 2012.

Doug Norwood, Alison Lee, Norwood & Norwood, P.A., Rogers, for appellant.

Paul M. Gehring, Office of Revenue Legal Counsel, Little Rock, for appellee.

JIM GUNTER, Justice.

Appellant appeals the circuit court's order affirming the suspension of his driving privileges. On appeal, appellant argues that the circuit court erred in finding that Ark.Code Ann. § 5–65–402 (Supp.2009) was constitutional. Because this is an appeal challenging the constitutionality of an act of the General Assembly, this court has jurisdiction pursuant to Ark. Sup.Ct. R. 1–2(b)(6). We find no error and affirm.

On December 21, 2010, appellant was pulled over by an officer with the Arkansas State Police on suspicion of driving while intoxicated (DWI). After failing three field-sobriety tests, appellant was placed under arrest for the offense of DWI (Drugs). Appellant was required to surrender his driver's license and was issued a temporary driver's license that was valid for thirty days. Pursuant to statutory requirements for first-time offenders, appellant's driver's license was suspended for six months, and his commercial driver's license (CDL) was disqualified for one year.

Appellant requested an administrative hearing to contest the suspension of his driving privileges, and a hearing was held on January 7, 2011. At the hearing, appellant presented a note from his physician, Dr. Marlan Rhame, and results from urine and blood tests performed by Dr. Rhame on December 23, 2010, which showed that appellant's urine drug screen was positive for opiates. In the note, Dr. Rhame explained that

> Mr. Miller has chronic back pain for which he uses a Fentanyl patch and percocet to control his pain.... He was seen in my clinic on 23December2010 and had a negative serum alcohol level and a urine drug screen positive for opiates which was expected. He also was noted to have a sinus infection which has been causing him to have vertigo and has been dropping his blood sugars. These findings may account for his odd presentation when arrested by a State Trooper recently for possible DWI.

Based on the arresting officer's sworn statement, as well as the test results provided by appellant, the hearing officer, Maureen Strobel, upheld the suspension of appellant's CDL for one year and appellant's non-commercial driver's license for six months. However, according to the hearing summary, appellant was eligible for a restricted Class D non-commercial license during those six months. The suspension of appellant's driving privileges was scheduled to take effect on January 21, 2011.

On January 14, 2011, appellant filed a petition for de novo review in the Washington County Circuit Court and requested that his driving privileges be reinstated during the pendency of the appeal. On January 31, 2011, the court entered an order declining to stay the suspension of appellant's driving privileges at that time

and setting a hearing on the matter for February 8, 2011. For reasons unclear from the record, the February 8 hearing was continued until February 24, 2011.

Immediately prior to the hearing on February 24, 2011, appellant filed a motion to have Ark.Code Ann. § 5–65–402 declared unconstitutional. Appellant argued that the statute violated the due process clause, both on its face and as applied, because he did not receive a full and fair administrative hearing. Appellant asserted that the hearing officer, Maureen Strobel, was biased against him and that he was denied a fair hearing because he could not subpoena any witnesses or present evidence favorable to him for the hearing. Finally, appellant argued that the de novo review by the circuit court was inadequate to cure this Fourteenth Amendment due-process violation.

At the hearing, the court acknowledged that a motion to have § 5–65–402 declared unconstitutional had been filed that day but found that it was not ripe for consideration, as the Attorney General's office had not yet been notified.[1] Maureen Strobel, who was subpoenaed by appellant, testified that appellant had wanted an extension on the administrative hearing so that he could gather more witnesses and more evidence and that he believed it was not fair that the arresting officer was not there to testify. She testified that she told appellant that as long as she had the officer's sworn statement, she was bound to uphold the suspension; that the only thing she considered was the officer's report; that she would always believe the officer's sworn statement; and that this was the way that administrative hearings were conducted around the state. She testified that, at the hearing, she did not have the police narra-tive from the arresting officer, the report from the drug recognition expert, or the crime lab results from the urine sample taken from appellant the morning of the arrest. She also testified, however, that she had reviewed the documents that appellant brought to the hearing and considered them in her decision-making process. She also noted that appellant had failed to call to her attention any specific item, testimony, or evidence that contradicted anything that was in the officer's report.

Appellant also testified at the hearing and stated that he was told by Strobel that she did not give back driver's licenses at administrative hearings. Appellant testified that Strobel said that sometimes the hearings were not fair and that she had nothing from the State to show that appellant was guilty. Appellant testified that she also told him that she had previously returned a person's license and gotten in trouble for it. He testified that he complained at the hearing that the police were not compelled to be there. At the conclusion of the hearing, the court decided to stay the suspension of appellant's driving privileges until a full hearing could be had on the matter. An order to this effect was entered on February 28, 2011, and a final hearing was scheduled on March 15, 2011.

At the final hearing, Anita Boatman, assistant administrator for the Office of Driver Services, testified that she had formerly been a hearing officer and that she had undergone training to become a hearing officer. She testified that, in a contested hearing, the hearing officer has the responsibility of making a determination, based on the preponderance of the evidence, whether the arresting officer had reasonable grounds to believe the person

---

1. In a letter filed March 14, 2011, the Attorney General's office declined to intervene in the case.

was driving while intoxicated. She testified that a hearing officer would consider any evidence submitted to him or her, whether submitted by the law enforcement officer or by the ⌐₅licensee, and that there was no limitation on what documents can be presented by the licensee or who the licensee can bring to the hearing to give testimony. Boatman testified that hearing officers are not trained to give greater weight to the officer's sworn report and that if a hearing officer believed he or she could not consider evidence contrary to the officer's report, that belief would be inconsistent with the hearing officer's training. Boatman testified that, based on Strobel's testimony, Strobel was not holding the administrative hearings correctly.

After Boatman's testimony, the court heard arguments from counsel, and appellant requested a continuance so he could procure additional witnesses to counter Boatman's testimony. The court agreed to the continuance, particularly noting that Strobel's testimony was inconsistent with Boatman's testimony. A final hearing was held on May 9, 2011, at which Boatman again testified and stated that she had reviewed the summaries of the hearings performed by Strobel and that the results of the hearings did not match Strobel's testimony. Boatman testified that Strobel's testimony implied that an officer's sworn statement would always override any other evidence, and yet there were hearings at which Strobel had ruled in favor of the licensee. From this, Boatman testified, it did seem that Strobel weighed all the evidence presented to her in making a decision. In addition to Boatman's testimony, the court also heard testimony from two other hearing officers, who both testified that they consider all the evidence presented to them, whether it is submitted by the police or by the licensee.

Following this testimony, the court heard additional arguments from counsel regarding the constitutionality of the statute. Appellant argued that the statute was unconstitutional as applied, because Strobel only considered the evidence from the officer's sworn report, and that ⌐₆the statute was unconstitutional on its face, because appellant had no power of subpoena to compel witnesses or other evidence. After taking a brief recess, the court made the following ruling from the bench:

> The testimony of Ms. Strobel earlier in this hearing was that she, also—that she considered the letter from Marlan Rhame, M.D., primary care physician in Fayetteville.
>
> . . . .
>
> Certainly there could be a situation where Arkansas Code Annotated 5–65–402 was applied in an unconstitutional way; however, I find, in this case, that it was applied constitutionally, that Mr. Miller was given an adequate hearing at the administrative level and that all of his due process rights were upheld.
>
> So I decline to find that 5–65–402 was unconstitutional as applied.

After hearing additional testimony from the arresting officer, the drug recognition expert, and appellant, as well as arguments from counsel, the court found that appellant was driving while impaired by intoxicants; that the State had met its burden of proof by a preponderance of the evidence; and ordered that the original suspension of appellant's driving privileges from the administrative hearing be reinstated. A written order incorporating the court's rulings was entered on June 1, 2011, including the court's finding that "Respondent provided Petitioner with an administrative hearing that did not violate Petitioner's rights of due process. Therefore, Ark.Code Ann. § 5–65–402 is not unconstitutional as applied to Petitioner."

Appellant filed a notice of appeal from this order on June 7, 2011.

In our review of the case, this court reviews the circuit court's order and determines whether the court's findings were clearly erroneous. *Burdine v. Ark. Dep't of Finance & Admin.*, 2010 Ark. 455, 379 S.W.3d 476. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court based on the entire evidence is left with a firm conviction that a mistake has been committed. *Id.* We review the circuit court's interpretation of the constitution de novo, and though this court is not bound by the circuit court's decision, its interpretation will be accepted as correct on appeal in the absence of a showing that the circuit court erred. *Summerville v. Thrower*, 369 Ark. 231, 253 S.W.3d 415 (2007). It is well settled that there is a presumption of validity attending every consideration of a statute's constitutionality that requires the incompatibility between it and the constitution to be clear before we will hold it unconstitutional. *See, e.g., Cato v. Craighead County Cir. Ct.*, 2009 Ark. 334, 322 S.W.3d 484. Any doubt as to the constitutionality of a statute must be resolved in favor of its constitutionality, and the heavy burden of demonstrating the unconstitutionality is upon the one attacking it. *Id.* If possible, this court will construe a statute so that it is constitutional. *See McLane S., Inc. v. Davis*, 366 Ark. 164, 233 S.W.3d 674 (2006).

On appeal, appellant reasserts his position that § 5–65–402 is unconstitutional, both on its face and as applied, as it violates the Due Process Clause of the Fourteenth Amendment. As a threshold matter, we note that the circuit court ruled only on the constitutionality of the statute as applied. The failure to obtain a ruling on the facial challenge precludes appellate review because there is no order of a lower

court on the issue for this court to review on appeal. *See Pro–Comp Mgmt., Inc. v. R.K. Enters., LLC*, 372 Ark. 190, 272 S.W.3d 91 (2008). Thus, the only issue for this court's review is whether the statute is unconstitutional as applied.

The United States Supreme Court has made clear that a driver's license is a constitutionally-protected interest and due process must be provided before one can be deprived of his or her license. *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). The hearing required by the Due Process Clause must be "meaningful" and "appropriate to the nature of the case." *Id.* at 541–42, 91 S.Ct. 1586. The appropriate process due in a given situation generally requires consideration of three distinct factors:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

In *Dixon v. Love*, 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977), the Court reviewed an Illinois statute and administrative regulations that provided for summary suspension or revocation, based on official records, of the license of a motorist who has been repeatedly convicted of traffic offenses, with a full administrative hearing available only after the suspension or revocation had taken effect. The Court held that, under the *Mathews* criteria, the statute and administrative regulations did comport with due process.

In *Mackey v. Montrym*, 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979), the Court examined a Massachusetts statute that mandated suspension of a driver's license if a licensee refused to take a breath-analysis test upon arrest for driving while under the influence of intoxicating liquor. The licensee, Montrym, argued that the statute was unconstitutional on its face because it authorized the suspension of his driver's license without affording him an opportunity for a pre-suspension hearing. The Court held that the case was materially indistinguishable from *Love* and that the statute in question did not violate due process. The Court explained:

> [W]hen prompt postdeprivation review is available for correction of administrative error, we have generally required no more than that the predeprivation procedures used be designed to provide a reasonably reliable basis for concluding that the facts justifying the official action are as a responsible government official warrants them to be.

*Id.* at 13, 99 S.Ct. 2612.

In the present case, appellant contends that his administrative hearing was flawed because the hearing officer, Maureen Strobel, testified that she only considered the State's proof, which resulted in a "sham" hearing. In support of this argument, appellant cites *In the Matter of Sweeney*, 257 A.2d 764 (Del.Super.Ct.1969). In *Sweeney*, a licensee was arrested for driving under the influence, and his driver's license was revoked for six months after he failed to consent to submit to a blood test to determine his blood-alcohol level. The arresting officer reported Sweeney's refusal in a sworn written report, and upon receipt of the report, Sweeney's license was suspended by the Motor Vehicle Commissioner. Sweeney requested a hearing, at which the arresting officer did not appear. On appeal, the superior court judge held that Sweeney was entitled to a fair hearing and that his due process rights were violated when the Commissioner received the officer's report in lieu of the officer's testimony.

Appellant suggests we look to *Javed v. Department of Public Safety, Division of Motor Vehicles*, 921 P.2d 620 (Alaska 1996), for what constitutes a meaningful hearing under due process. In *Javed*, the Alaska Supreme Court held that, in cases where there is an issue as to whether the accused was actually driving a vehicle, due process requires an inquiry into this issue before the accused's driver's license can be suspended. The court explained that, under the Alaska Constitution, licensees are entitled to a "meaningful hearing," which "would require the presence of the arresting officer, the production of the report of the arresting officer and any tape recordings, videotapes, or transcripts concerning events surrounding the arrest, and the presence of witnesses having evidence to offer on contested points." [2]

Appellant also cites to cases from other jurisdictions where statutes governing the administrative suspension of driver's licenses have been held in violation of the due process clause. For example, in *Thomas v. Fiedler*, 700 F.Supp. 1527 (E.D.Wis.1988), a federal district judge found that Wisconsin's administrative procedure for suspending the driver's license of anyone who tests positively for driving while impaired was unconstitutional. Under the Wisconsin administrative procedure, the driver was given the right to

---

**2.** This language in *Javed* is quoted from a footnote in *Graham v. State*, 633 P.2d 211 (Alaska 1981). *Graham* specifically acknowledged that *Mackey, supra,* had reached a different result but found that it was not bound by that decision in construing the due process clause of the Alaska Constitution. In contrast, the present case argues a violation of the federal due process clause.

present evidence but was precluded from subpoenaing the arresting officer or other witnesses. Also, regardless of the evidence presented by the driver, the hearing officer would accept the unsworn report of the arresting officer as being true. While recognizing that these shortcomings could be held insufficient to render the procedures unconstitutional if a prompt post-deprivation hearing was provided for, the court found as well that the judicial review provided for was neither meaningful nor timely.[3]

Another recent case cited by appellant is *Kempke v. Kansas Department of Revenue*, 281 Kan. 770, 133 P.3d 104 (2006), in which the Kansas Supreme Court held that even though a driver could not call additional witnesses at the administrative hearing, his due process rights were not violated because the suspension of the driver's license did not take place until after a de novo appeal to district court, where he could call other witnesses. Appellant contrasts this case with the Arkansas statute, which provides that an appeal to circuit court does not operate as a stay of the hearing officer's decision but that the circuit court can stay the decision. Ark.Code Ann. § 5–65–402(c)(2). Finally, appellant argues that his license was suspended for at least fifty-two days before the final de novo hearing took place, specifically from January 7, 2011, to February 28, 2011, which "far exceeds the time frame in which a meaningful hearing should be conducted under the federal due process clause of the Fourteenth Amendment."[4]

Keeping in mind that our review is limited to the constitutionality of the statute as applied to appellant, we hold that appellant has failed to demonstrate that the circuit court erred in finding that the statute was constitutional. First, despite appellant's assertion that Strobel only considered the State's proof, the circuit court specifically found that Strobel had also testified that she considered the letter from appellant's doctor in reaching her decision, and appellant makes no argument that the court's finding was clearly erroneous.

Second, the cases cited by appellant in support of his argument are distinguishable or actually support a finding of constitutionality in the present case. *Sweeney* was decided before the Supreme Court decisions holding that reliance on the sworn reports of police officers is acceptable and presents an "insubstantial" risk of erroneous observation or deliberate misrepresentation of the facts by the reporting officer. *See Mackey*, 443 U.S. at 14, 99 S.Ct. 2612. *Javed*, as previously noted, was based on an interpretation of the due process clause in the Alaska Constitution, not the federal due process clause. And finally, both *Thomas* and *Kempke* acknowledge that the availability of a de novo hearing before the circuit court can cure any alleged defect at the administrative level.

Third, the Supreme Court has made clear that, in driver's license suspension cases such as this, "something less than an

---

3. Based on these findings, the court granted a preliminary injunction that enjoined the application of the administrative procedures; however, the state's appeal from this order was later rendered moot by the Wisconsin legislature's amendment of the statutes in question to address the district court's concerns. *See Thomas v. Fiedler*, 884 F.2d 990 (7th Cir.1989).

4. As acknowledged by appellant at oral argument, he is incorrect in this calculation. The suspension of appellant's license was not effective until January 21; thus, his driving privileges were suspended from January 21 till February 28, when the circuit court stayed the suspension, which is a total of thirty-eight days.

evidentiary hearing is sufficient prior to adverse administrative action" as long as there is prompt post-deprivation review available for correction of administrative error. *See Mackey*, 443 U.S. at 13, 99 S.Ct. 2612. In the present case, the administrative order of suspension was entered on January 7, 2011, and scheduled to take effect on January 21, 2011; appellant's request to stay the suspension of his driving privileges was granted on February 28, 2011; and a de novo hearing was held on March 15, 2011. At appellant's request, that hearing was then continued until May 9, 2011. Even including the time between March 15 and May 9, appellant's final de novo hearing was held seventy days after the stay was granted by the circuit court, which is well within the one-hundred-twenty-day limit imposed under § 5–65–402(c)(2)(C)(i).[5] Thus, we hold that § 5–65–402 is not unconstitutional as applied to appellant in this case.

Affirmed.

---

5. We also note that during the time that appellant's suspension was in effect, from January 21, 2011 to February 28, 2011, appellant was not actually deprived of all driving privileges, as he obtained a restricted license pursuant to Ark.Code Ann. § 5–65–120.