2012 Ark. 328

**Laura NEAL, Individually and as Administratrix of the Estate of Arvilla Langston, Deceased, David Langston, and Lelia Branch, Appellants**

v.

**SPARKS REGIONAL MEDICAL CENTER, Appellee.**

No. 11–1196.

Supreme Court of Arkansas.

Sept. 13, 2012.

Rehearing Denied Oct. 11, 2012.

McCutchen and Sexton, Attorneys at Law, Fort Smith, by: Sam Sexton, III, for appellants.

Conner & Winters, LLP, Fayetteville, by: G. Alan Wooten and Vicki Bronson, for appellee.

COURTNEY HUDSON GOODSON, Justice.

Appellants Laura Neal, individually and as administratrix of the estate of Arvilla Langston (Langston), David Langston, and Lelia Branch appeal two orders of the Sebastian County Circuit Court granting summary judgment in favor of appellee Sparks Regional Medical Center (SRMC), denying their motion for reconsideration, and striking their amended complaint. For reversal, appellants argue that the circuit court erred in granting summary

judgment, in failing to rule on a loss-of-chance theory of recovery, and in striking their amended complaint. This court has jurisdiction pursuant to Arkansas Supreme Court Rule 1–2(a)(7), as we previously decided *Neal v. Sparks Regional Medical Center*, 375 Ark. 46, 289 S.W.3d 8 (2008). We affirm.

On July 20, 2003, Arvilla Langston, an eighty-one-year-old woman, presented to SRMC's emergency room with complaints of chest pain, left-arm numbness, back discomfort, and nausea. Langston described her pain as a ten on a level from one to ten. Medical records revealed that her July 20, 2003 emergency-room visit was her fourth visit in a two-week period. Dr. Jose Alemparte, a cardiologist, admitted Langston to SRMC.

On July 21, 2003, Dr. Alemparte performed a diagnostic catheterization, which revealed a ninety-five-percent blockage of the left anterior descending artery. Dr. Jorge Hernandez, an interventional cardiologist, then performed an angioplasty that included the insertion of a stent. He also ordered Plavix, an anti-platelet drug, in conjunction with Heparin, an anti-coagulant medication, but Langston did not receive Plavix until the following day. After the angioplasty, Langston complained of significant chest pain. Dr. Hernandez performed a second arteriogram, finding that the stent was in place and that the blood vessel was open. Langston developed hypotension and continued experiencing severe chest pain. An electrocardiogram showed a small pericardial effusion and an impression of mild atrial collapse. The two doctors discussed these findings, and Dr. Hernandez performed a pericardiocentesis, which resulted in the collection of twenty to thirty milliliters of fluid. Langston was transferred to the intensive-care unit where she remained relatively stable.

On July 22, 2003, at 6:04 a.m., an electrocardiogram revealed that Langston had suffered a heart attack. At 9:00 a.m., Dr. Alemparte learned of Langston's condition and ordered another electrocardiogram, which revealed the same findings as the previous electrocardiogram. Dr. Hernandez performed another catheterization and found a blockage in the artery where he had placed the stent the previous day. Dr. Hernandez performed a procedure on the occluded stent and placed two additional stents in that area. At this time, Langston's blood work indicated that her hemoglobin level had steadily and rapidly declined, and she received multiple blood transfusions. Subsequently, she developed hypotension, acidosis, and liver failure. She also developed renal insufficiency, which the consulting nephrologist thought was due to her hypotension and possibly the use of the contrast dye required by the heart-catheter and angioplasty procedures. Langston's condition remained guarded at this point, and she was placed on a do-not-resuscitate status per the family's request.

On July 23, 2003, Langston's condition continued to decline, and that afternoon, she coded. Dr. Hernandez responded to the code and found her in an agonal rhythm. The doctor discussed Langston's condition with her family, and no further life-saving attempts were made per the family's request. According to the deposition testimony of appellant Laura Neal, Neal's brother informed her that a nurse and a student nurse had not locked the hospital bed, which caused Langston and the mattress to fall off the bed. The two nurses caught the mattress and Langston and placed them back on the bed. When Neal was asked if she spoke to the nurses or anyone at SRMC about this incident, she replied, "No." Langston died shortly thereafter.

On July 19, 2005, appellants filed a medical-malpractice action against SRMC and Sparks Medical Foundation alleging that

Langston died as the result of SRMC's alleged failure to properly care for, diagnose, and treat Langston. Specifically, appellants alleged that Langston's death was caused by the negligence of SRMC nurses in failing to administer Plavix at the time of, or after, her first angioplasty procedure on July 21, 2003, and in failing to notify Dr. Alemparte of the results of the July 22, 2003 electrocardiogram. SRMC filed an amended answer, and the circuit court dismissed the case on the grounds of charitable immunity. This court reversed, holding that the circuit court erred in failing to strike the amended answer. *Neal, supra.*

On remand, SRMC moved for summary judgment on the wrongful-death claim, arguing that any alleged negligence did not proximately cause the death of Arvilla Langston because appellants could not show that Langston would have survived in the absence of SRMC's negligence. In support of its motion for summary judgment, SRMC offered the following exhibits: appellants' complaint; Dr. Alemparte's deposition; Dr. Hernandez's deposition; Langston's medical records; Dr. Timothy C. Waack's affidavit; appellants' responses to interrogatories and requests for the production of documents; and Nurse Carolyn Ford's affidavit. Appellants filed a response supported by portions of the deposition testimony of Dr. Alemparte and Dr. Hernandez, as well as the deposition of appellant Laura Neal. After considering the motions and pleadings, the circuit court entered an order granting summary judgment and dismissing appellants' claims. In its order, the circuit court made the following rulings:

> Neither Dr. Hernandez nor Dr. Alemparte stated that any actions or failure to act on the part of employees of [SRMC] proximately caused Mrs. Langston's death. Dr. Waack specifically testified in his affidavit that earlier intervention in the catheterization would not have changed the course of Mrs. Langston's care, that the fact that the patient did not receive Plavix following the initial catheterization and stint [sic] procedure or the failure to document why the medication was not given was not a proximate cause of the death of Mrs. Langston and, finally, that the failure to notify Dr. Alemparte of the change in Mrs. Langston's EKG on July 22, 2003 was not a proximate cause of decedent's death. The only other testimony [appellants] have to offer is the testimony of two nurses. The testimony of the additional expert named Elizabeth Stolzfus is unknown as there is no affidavit or no suggestion as to the subject matter of her specific testimony. The other nurse, Carolyn Ford, does offer the opinion that Mrs. Langston expired as a result of improper care received at [SRMC].

> [Appellants] have failed to sustain the burden of proof to meet facts with fact or refute any of the material facts in this case.... Although a nurse may be an expert witness as to the standard of care for other nurses, it is not proper for a nurse to offer testimony on the issue of proximate causation as this is outside of the area of their expertise.

On September 12, 2011, appellants timely filed their notice of appeal from the judgment.

After the entry of the court's order, appellants filed an amended complaint attempting to raise a pre-death claim not pled in the initial complaint. Appellants filed a motion for reconsideration and new trial, requesting the circuit court to reconsider its ruling granting summary judgment in favor of SRMC and dismissing appellants' complaint. The circuit court denied appellants' motion for reconsideration and new trial and granted SRMC's motion to strike appellants' amended complaint. In its order, the circuit court ruled

that appellants failed to set forth specific grounds for reconsideration; that appellants were not permitted to pursue a claim for Langston's conscious pain and suffering not previously pled; that no evidence supported such a claim; and that appellants filed the amended complaint after the circuit court had already granted summary judgment and dismissed the complaint. Appellants timely filed a notice of appeal and amended notice of appeal. From both of the circuit court's orders, appellants bring their appeal.

For the first point on appeal, appellants argue that the circuit court erred in granting summary judgment and in ruling that no genuine issue of material fact existed on the issue of causation between SRMC's alleged negligence and Langston's death. In support of this argument, appellants point to alleged discrepancies between the doctors' deposition testimony. More specifically, appellants assert that they presented a genuine issue of material fact on SRMC's alleged failure to administer Plavix and failure to notify a doctor until three hours after Langston's heart attack on the morning of July 22, 2003. SRMC responds that the circuit court properly granted summary judgment because appellants failed to meet their burden of proof on the element of causation.

 We consider summary judgment as one of the tools in a circuit court's efficiency arsenal. *Foreman Sch. Dist. No. 25 v. Steele*, 347 Ark. 193, 61 S.W.3d 801 (2001). Summary judgment is to be granted by a trial court if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ark. R. Civ. P. 56; *Pfeifer v. City of Little Rock*, 346 Ark. 449, 57 S.W.3d 714 (2001); *Mashburn v. Meeker Sharkey Fin. Grp., Inc.*, 339 Ark. 411, 5 S.W.3d 469 (1999).

The purpose of summary judgment is not to try the issues, but to determine whether there are any issues to be tried. *Elam v. First Unum Life Ins. Co.*, 346 Ark. 291, 57 S.W.3d 165 (2001); *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000).

 Summary judgment is to be granted by a circuit court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Cent. Okla. Pipeline, Inc. v. Hawk Field Servs., LLC*, 2012 Ark. 157, 400 S.W.3d 701. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Campbell v. Asbury Auto., Inc.*, 2011 Ark. 157, 381 S.W.3d 21. We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings, but also on the affidavits and documents filed by the parties. *Id.*

 To establish a prima facie case of negligence, the plaintiff must demonstrate that the defendant breached a standard of care, that damages were sustained, and that the defendant's actions were a proximate cause of those damages. *Union Pac. R.R. Co. v. Sharp*, 330 Ark. 174, 952 S.W.2d 658 (1997). Proximate causation is an essential element for a cause of action in negligence. *Clark v. Ridgeway*, 323 Ark. 378, 914 S.W.2d 745 (1996). "Proximate cause" is defined, for negligence purposes, as that which in a natural and continuous sequence, unbroken by any

efficient intervening cause, produces the injury, and without which the result would not have occurred. *Sharp, supra.* Although proximate causation is usually a question of fact for a jury, where reasonable minds cannot differ, a question of law is presented for determination by the court. *Cragar v. Jones,* 280 Ark. 549, 660 S.W.2d 168 (1983). When a party cannot present proof on an essential element of his claim, the moving party is entitled to summary judgment as a matter of law. *Sanders v. Banks,* 309 Ark. 375, 830 S.W.2d 861 (1992).

First, we turn to appellants' theory of negligence involving the nurses' alleged failure to administer Plavix to Langston after her first angioplasty procedure. Dr. Hernandez's deposition testimony reveals that he was never asked about his medical opinion regarding whether the failure to administer medications caused or otherwise contributed to Langston's death. He testified that there was a "very small risk" of a clot forming following the placement of a stent in an artery, but he never stated that the lack of Plavix caused the clot to form or led to Langston's death.

Dr. Alemparte's deposition testimony reveals that appellants specifically questioned him about the cause of Langston's death. Dr. Alemparte stated that Langston had a heart attack caused by a clot that formed in the first stent placed by Dr. Hernandez on July 21, 2003. When asked about the absence of Plavix, Dr. Alemparte replied that the failure to administer the Plavix "could have been a factor" that attributed to the blockage, but that the risk of clotting is reduced from fifteen percent without Plavix to five percent with Plavix. Additionally, Dr. Waack, a cardiol-

ogist from Fort Smith, reviewed Langston's records and stated that

> an earlier intervention in the catheterization lab would not have reversed the ultimate course of the patient. The fact that nurses did not give the patient Plavix following the initial catheterization and stent procedure or failure to properly document why this medication was not given as ordered ... would not have been a proximate cause of Ms. Langston's death.

Moreover, Dr. Waack explained that Plavix could have exacerbated her retroperitoneal bleeding and perforation.

Second, we address appellants' theory of negligence that the SRMC nurses failed to notify Dr. Alemparte immediately after the 6:04 a.m. electrocardiogram. Dr. Alemparte declined to state that Langston more likely than not would have survived had she been taken to the catheterization laboratory sooner. He admitted that any opinion on that issue would be speculative. Dr. Alemparte recounted Langston's complications, including acidosis, hypotension, nausea, and continued chest pain, and stated that "we were all in agreement that she was very sick" with an uncertain life expectancy.

In the case at bar, appellants, in order to overcome SRMC's motion for summary judgment, were required to present proof that, but for the failure of the SRMC nurses to administer Plavix or the failure to notify Dr. Alemparte, Langston would not have died. However, appellants failed to meet proof with proof on this issue. Appellants merely offered portions of Dr. Alemparte's and Dr. Hernandez's depositions, as well as the deposition testimony of appellant Laura Neal.[1] Dr. Alemparte

---

1. In Nurse Ford's deposition testimony, she recounted Langston's stay in the hospital and stated, "Ms. Langston died as a result of improper care on behalf of the nurses on 07/23/03." She also stated, under a para- graph entitled "Damages," that "Ms. Arvilla Langston expired on 07/23/03 due to the improper care that she received at [SRMC]."

On this issue, the circuit court stated:

testified that Langston suffered from persistent hypotension after her first angioplasty and that her hypotension was a significant contributing factor in her deteriorating condition, including renal failure, liver failure, acidosis, and cardiogenic shock. Neither doctor gave an opinion that any particular act of SRMC or its employees caused Langston's death. According to Dr. Waack's affidavit, none of SRMC's employees' actions or failure to act proximately caused Langston's death. None of the doctors opined that Langston would have survived but for the fact that she did not receive Plavix on July 21, 2003, or that she would not have died but for the delay in notifying the doctor of the July 22, 2003 electrocardiogram results.

Here, the circuit court based its order of summary judgment on the following finding: "Plaintiffs have failed to sustain the burden of proof to meet facts with fact or refute any of the material facts in this case." Based on the foregoing reasons, we hold that the circuit court did not err in this ruling. With the doctors' expert opinions lacking proximate cause, appellants were duty bound to meet proof with proof, which they did not produce. On the record before us, SRMC has demonstrated that no material issues of disputed fact exist and that it is entitled to summary judgment as a matter of law. Accordingly, we affirm the circuit court's grant of summary judgment.

■ For the second point on appeal, appellants argue that expert testimony from Nurse Carolyn Ford, Dr. Alemparte, and Dr. Hernandez indicate that errors were so egregious that the circuit court should have ruled that a loss-of-chance survival claim was sufficient to overcome summary judgment. Appellants urge this court to adopt the loss-of-chance doctrine in Arkansas.

■ However, the circuit court did not provide a ruling on this issue, and it is an appellant's responsibility to obtain a ruling to preserve an issue for appeal. *Miller v. Ark. Dep't of Fin. & Admin.*, 2012 Ark. 165, 401 S.W.3d 466. The failure to obtain a ruling on an argument precludes appellate review because there is no order of a lower court on the issue for this court to review on appeal. *Id.* (citing *Pro–Comp Mgmt., Inc. v. R.K. Enters., LLC*, 372 Ark. 190, 272 S.W.3d 91 (2008)). Because the circuit court did not specifically rule on the issue, we are precluded from addressing the merits of appellants' argument on appeal.

■ For the third point on appeal, appellants argue that the circuit court erred in striking their amended complaint. Appellants concede that they did not plead this claim in their original complaint, "although it was understood that Laura Neal was seeking damages for the pre-death pain and suffering." Specifically, appellants contend that discovery was conducted concerning the survivorship claim, as SRMC inquired about any potential harm caused to Langston by being dropped and by suffering the effects of a heart attack for three hours before a doctor was notified.

Rule 15 of the Arkansas Rules of Civil Procedure encourages liberal amendments of pleadings. *Dupree v. Twin City Bank,*

Plaintiffs [appellants] have the burden to offer expert testimony as to the standard of care, breach of that standard, and proximate causation. Ark.Code Ann. § 16–114–206(a). *Skaggs v. Johnson*, 323 Ark. 320, 325, 915 S.W.2d 253, 256 (1996). Although a nurse may be an expert witness as to the standard of care for other nurses, it is not proper for a nurse to offer testimony on the issue of proximate causation, as this is outside of the area of their expertise.

Appellants do not raise Nurse Ford's statement as a separate theory of negligence in their briefs.

300 Ark. 188, 777 S.W.2d 856 (1989). Rule 15(a) states in pertinent part:

[A] party may amend his pleadings at any time without leave of the court. Where, however, upon motion of an opposing party, the court determines that prejudice would result or the disposition of the cause would be unduly delayed because of the filing of an amendment, the court may strike such amended pleading or grant a continuance of the proceeding.

The circuit court is vested with broad discretion in allowing or denying amendments. *Turner v. Stewart*, 330 Ark. 134, 952 S.W.2d 156 (1997). While Rule 15 allows for liberal amendments of pleadings, we adhere to our well-established standard of review that we will not reverse a circuit court's decision allowing or denying amendments to pleadings absent a manifest abuse of discretion. *Neal, supra; Williams v. Brushy Island Pub. Water Auth.*, 368 Ark. 219, 243 S.W.3d 903 (2006).

In this case, the following facts are significant. On August 11, 2011, the circuit court entered its order granting summary judgment in favor of SRMC. Subsequently, on August 17, 2011, appellants filed an amended complaint to include a new predeath claim that was not pled in the original complaint. Appellants' amended complaint contained the following additional language:

10. While under the care of nurses and staff of Sparks Regional Medical Center, Arvilla Langston was dropped and caused to incur pain and suffering.

11. ... Prior to her death, she incurred significant pain and suffering prior to her passing.

. . . .

13. Arvilla Langston passed away and suffered severe pain and emotional harm prior to her passing. . . .

By a letter directed to the circuit court, appellants indicated that the reason for filing the amended complaint was to make certain that the "pre-death claim is before the Court." In the letter, appellants alleged that discovery and negotiations on the pre-death claim had been conducted. Appellants also filed a motion for reconsideration of the court's summary-judgment ruling, requesting that the court reconsider its grant of summary judgment because "claims were remaining which related to a survivorship claim." However, the court found that appellants failed to plead a survivorship claim in the original complaint and that "no evidence before the court [supported] such a claim." The circuit court denied the motion for reconsideration and struck appellants' answer.

We do not discern a manifest abuse of discretion in striking appellants' amended complaint. While Laura Neal described Langston being dropped in her deposition, she did not mention any conscious pain and suffering by Langston in her deposition testimony. Nor was a pre-death claim pled in appellants' original complaint before the court. For these reasons, we do not find a manifest abuse of discretion. Accordingly, we affirm the circuit court's ruling.

Affirmed.