Cite as 2020 Ark. App. 570

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-20-202

| | |
|---|---|
| HERMAN DIXON, PERSONAL REPRESENTATIVE OF THE ESTATE OF NORA G. DIXON, DECEASED, AND ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF NORA G. DIXON<br><br>APPELLANT<br><br>V.<br><br>P. REDDY TUKIVAKALA, M.D., P.A.; AND P. REDDY TUKIVAKALA, M.D., INDIVIDUALLY<br><br>APPELLEES | **Opinion Delivered:** December 9, 2020<br><br>APPEAL FROM THE PHILLIPS COUNTY CIRCUIT COURT<br>[NO. 54CV-18-76]<br><br>HONORABLE CHRISTOPHER W. MORLEDGE, JUDGE<br><br>AFFIRMED |

**MIKE MURPHY, Judge**

This suit stems from the death of Nora Dixon. Nora passed away on November 14, 2016, at the age of 82, due to acute blood loss from a dialysis shunt. Appellant Herman Dixon, as the personal representative of Nora's estate and on behalf of Nora's wrongful-death beneficiaries, filed this medical-malpractice action against R.C.G. Mississippi, Inc., d/b/a/ Fresenius Medical Care Helena (Fresenius), and against Dr. Reddy Tukivakala (referred to by the parties and throughout the litigation as Dr. Reddy). The issue on appeal is whether the circuit court erred in granting summary judgment. We affirm.

Dr. Reddy had been Nora's primary-care physician since 1997. When Nora entered end-stage renal failure in 2010, Dr. Reddy ordered her on dialysis three times a week and

oversaw her dialysis treatment, at least some of which she was receiving at Fresenius's dialysis center in Helena, Arkansas.

To facilitate dialysis, Nora had an arteriovenous graft (AV graft) in her left arm above her elbow. In late September 2016, Nora underwent dialysis at a Fresenius Clinic in Memphis, Tennessee. An employee at the Memphis clinic stuck Nora in a weak area, which resulted in excessive bleeding from the AV graft. On October 13, 2016, Nora called Dr. Reddy because she was sore at the dialysis-access port and had a lesion near the AV graft. Dr. Reddy prescribed a course of antibiotics. When he saw her at Fresenius on October 28, he noticed the lesion was healing but that she was also developing a pseudoaneurysm (a ballooning under the skin) near the graft site. Dr. Reddy referred her to vascular surgeon Dr. Eric Gardner for evaluation. Dr. Gardner specializes in dialysis-access surgery, and he determined Nora needed a graft replacement. The replacement was scheduled for November 15, 2016. At the evaluation, Dr. Gardner was aware of the prior infection, but he determined that the existing AV graft was acceptable for continued use until he could replace it.

On November 14, Nora went to Fresenius for her routine dialysis. When she returned home, she began to hemorrhage from the AV graft. She passed away from acute blood loss from the dialysis shunt.

Nora's estate settled with Fresenius, and her claims against Fresenius were dismissed with prejudice. The remaining litigation revolves around the estate's allegations that Dr.

Reddy was negligent in his assessment and treatment of Nora's AV graft, and that negligence was the proximate cause of Nora's injuries. Specifically, the appellant alleged that

> [Dr. Reddy] was negligent and failed to meet the applicable standard of care in providing medical services to Decedent, in one or more of the following ways; any, some, or all of which are departures from the accepted standard of care for such health care providers in the same or similar communities, as follows:
>
> > a. by failing to provide Decedent with routine and accurate inspection and examination of the AV graft, so as to assess for breakdown of the graft in order to timely and adequately intervene to prevent the graft's failure;
> >
> > b. by failing to provide accurate assessment and proper treatment to Decedent at the first sign of graft deterioration;
> >
> > c. by failing to provide Decedent with adequate and appropriate preventative care; and
> >
> > d. by improperly allowing Decedent to continue dialysis using the failing AV graft.

Dr. Reddy answered and later moved for summary judgment on the basis of lack of duty and lack of proximate legal causation. He argued that his referral to Dr. Gardner and Dr. Gardner's independently formulated treatment plan regarding continued use of the existing AV graft extinguished any continuing duty and severed the causal chain to Nora's death from the sudden and unexpected failure of her AV graft.

Dixon replied and argued that Dr. Reddy owed duties to Nora and that those duties could not be extinguished by mere virtue of referring her to another doctor because his breach of those duties initiated the causal chain of events ultimately causing the injury. The circuit court heard oral argument on the motion. In the order granting Dr. Reddy's motion for summary judgment, the circuit court explained that

3

1. The decedent, Ms. Dixon, had no interaction with Dr. Reddy after his evaluation of her on October 28, 2016. Thus, he had not seen her for seventeen days prior to her death. Ms. Dixon had not contacted Dr. Reddy by telephone, come to his office, or otherwise sought his guidance as to any issue after October 28, 2016.

2. On October 13, 2016, Dr. Reddy prescribed antibiotics to Ms. Dixon at her request. After that time, he referred her to Dr. Gardner for the evaluation of a vascular surgeon. Once Dr. Gardner saw the patient and developed a treatment plan for her, that broke any alleged causative link between Dr. Reddy's earlier treatment of Ms. Dixon and her ultimate death.

3. The patient did not seek Dr. Reddy's advice or treatment with respect to the treatment plan put in place by Dr. Gardner. Dr. Reddy had no independent duty to review Dr. Gardner's plan as a vascular surgeon, nor did he have a duty to provide a different plan with respect to any vascular surgery needs of Ms. Dixon when she did not seek his advice. Furthermore, it is outside his area of expertise to provide advice regarding issues related to vascular surgery.

4. Ms. Dixon did not consult Dr. Reddy or advise him that she experienced a herald bleed on November 13, 2016. Dr. Reddy had no duty to undertake any actions in response to the herald bleed since he was unaware of it.

5. It is of material consequence that the nurses at Fresenius Medical Care Helena were the only people, other than Ms. Dixon, aware of the herald bleed. It has come to the Court's attention that the plaintiff's claims against R.C.G. Mississippi, Inc. d/b/a Fresenius Medical Care Helena have been resolved through a settlement.

6. In light of these findings: Dr. Reddy had no duty to intervene in the treatment plan set in place by Dr. Gardner, Dr. Reddy could have no duty to respond to the herald bleed of which he was unaware, and Dr. Gardner's treatment of Ms. Dixon was an efficient, intervening cause breaking the causative chain between Dr. Reddy's earlier treatment of Ms. Dixon and her ultimate outcome, the plaintiff cannot meet his burden of proof to establish a medical malpractice claim against Dr. Reddy.

Dixon timely appealed. On appeal, he argues that the circuit court erred in granting Dr. Reddy's motion for summary judgment because Dr. Reddy's duties to Nora did not extinguish once Dr. Gardner saw the patient and material questions of fact existed regarding the issue of causation.

4

We consider summary judgment as one of the tools in a circuit court's efficiency arsenal. *Neal v. Sparks Reg'l Med. Ctr.*, 2012 Ark. 328, at 6, 422 S.W.3d 116, 120. The purpose of summary judgment is not to try the issues but to determine whether there are any issues to be tried. *Id.* Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, we determine if summary judgment was appropriate by ascertaining whether the evidentiary items presented by the moving party in support of the motion leave a material question of fact unanswered. *Id.* We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.*

To establish a prima facie case of negligence, the plaintiff must demonstrate that the defendant breached a standard of care, that damages were sustained, and that the defendant's actions were a proximate cause of those damages. *Black v. Rowen*, 2013 Ark. App. 349. The appellees frame this case as one that hinges on the existence (or lack thereof) of a duty of care and proximate cause. They assert that that a referring physician's duty to a patient should be considered extinguished once a specialist assumes care and exercises independent medical judgment as to the patient's treatment plan; particularly, when the causal chain is broken by that specialist's decisions. They contend that is exactly what happened here: Nora saw Dr. Reddy about pain in her AV graft. Dr. Reddy prescribed some general antibiotics and referred her to a specialist. The specialist assumed care, knowing the treatments Dr. Reddy had already provided, and made his own independent assessment of the AV graft.

5

Thus, Dr. Reddy no longer owed Nora any duty of care such that he should be held liable for her death.

In tort law, the nature of any given duty is defined by the applicable standard of care. *Young v. Gastro-Intestinal Ctr., Inc.*, 361 Ark. 209, 225, 205 S.W.3d 741, 753 (2005) (Imber, J., dissenting). Whether a duty exists is always a question of law not to be decided by a trier of fact. *Id.* at 218, 205 S.W.3d at 747. In medical–malpractice actions, the standard of care is fixed by the General Assembly and reads as follows:

> (a) In any action for medical injury, when the asserted negligence does not lie within the jury's comprehension as a matter of common knowledge, the plaintiff shall have the burden of proving:
>
> (1) By means of expert testimony provided only by a medical care provider of the same specialty as the defendant, the degree of skill and learning ordinarily possessed and used by members of the profession of the medical care provider in good standing, engaged in the same type of practice or specialty in the locality in which he or she practices or in a similar locality;
>
> (2) By means of expert testimony provided only by a medical care provider of the same specialty as the defendant that the medical care provider failed to act in accordance with that standard; and
>
> (3) By means of expert testimony provided only by a qualified medical expert that as a proximate result thereof the injured person suffered injuries that would not otherwise have occurred.

Ark. Code Ann. § 16-114-206 (Repl. 2016).

Our model jury instructions contemplate this type of duty owed by a physician to his patient. They provide that a physician "must possess and apply with reasonable care the degree of skill and learning ordinarily possessed and used" by other physicians of the same specialty in good standing who practice in the same or a similar locality. AMI Civ. 1501.

6

This is not a duty that can be summarily extinguished. As a matter of law, a doctor cannot be automatically absolved of potential wrongdoing that occurred before the doctor referred the patient to a specialist. The mere existence of a duty, however, is not enough to support a reversal on summary judgment.

Dixon argues that Dr. Reddy breached the standard of care, and that breach was the proximate cause of Nora's death. And while we agree with Dixon that Dr. Reddy owed a duty to Nora, we disagree that this record establishes proof of causation. Proximate causation is an essential element for a cause of action in negligence. *Black*, 2013 Ark. App. 349, at 5–6. Proximate cause is defined, for negligence purposes, as that which in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred. *Id.*

Dixon points us to the testimony of his expert witness, Dr. Huffman. Dr. Huffman opined that Dr. Reddy breached the standard of care when he prescribed Nora a round of antibiotics without first obtaining blood cultures and wound cultures to determine the specific organism behind the infection at Nora's graft site. Dr. Huffman stated:

> I think that if a culture had been done, and it was positive, and appropriate antibiotics had been given, given those hypotheticals, it is more likely than not exsanguination would not have happened at the time it did.

But, Dr. Huffman continued,

> Since a culture was not done, I cannot say to a reasonable degree of medical certainty that if a culture had been done then it would have been positive and would have shown that the antibiotic that was given was not effective as to this bug.

It is not enough for an expert to opine that there was negligence that was the proximate cause of the alleged damages. *Williamson v. Elrod*, 348 Ark. 307, 311, 72 S.W.3d 489, 492 (2002). The opinion must be stated within a reasonable degree of medical certainty or probability. *Id.*; *Thomas v. Meadors*, 2017 Ark. App. 421, at 13, 527 S.W.3d 724, 732. In *Meadors*, we explained that because neither of the expert witnesses could opine to a reasonable degree of medical certainty that the decedent would have lived but for the alleged negligence, the appellant could not present proof on an essential element of his claim. *Meadors*, 2017 Ark. App 421, at 13–14, 527 S.W.3d at 732.

Like the testimony in *Meadors*, Dr. Huffman's testimony does not satisfy our requirements that a plaintiff in a medical-malpractice case demonstrate that the defendant breached a standard of care, and that breach was the proximate cause of the damages sustained. At best, Dr. Huffman's testimony establishes that *if* a culture had been done and *if* that culture was positive and *if* the empiric antibiotic ordered was not an appropriate treatment for that bacterial strain, *then* the graft would not have failed when it did. This is too attenuated to survive summary judgment.

We acknowledge that proximate causation is usually a question of fact for a jury. However, when reasonable minds cannot differ, a question of law is presented for determination by the court. Without needing to determine if Dr. Reddy even breached his duty of care by prescribing an empiric antibiotic and referring Nora to a specialist, Dixon did not present proof on the element of proximate cause; thus, summary judgment was appropriate.

Affirmed.

ABRAMSON and WHITEAKER, JJ., agree.

*David A. Hodges*, for appellant.

*Anderson, Murphy & Hopkins, L.L.P.*, by: *Julia M. Hancock* and *Mark D. Wankum*, for appellees.