McALMONT SUBURBAN SEWER IMPROVEMENT DIST.
NO. 242 *v.* McCAIN-HWY. 161, LLC

CA 06-1445                                    262 S.W.3d 185

Court of Appeals of Arkansas
Opinion delivered September 12, 2007

*Terrence Cain*; *Ivory Law Firm*, by: *George S. Ivory, Jr.*, for appellant.

*Stuart W. Hankins* and *A. Vaughan Hankins*, for appellee.

D.P. MARSHALL JR., Judge. This appeal arises out of an agreement about sewer services between the Sewer Committee of the City of North Little Rock, Arkansas, and the McAlmont Sewer Improvement District No. 242 of Pulaski County, Arkansas. We must answer questions about standing and the meaning of that agreement.

I.

In 1984, the Committee and the District made a thirty-year contract about sewer services. The parties agreed that the District would connect its sewer lines to a conveniently located treatment plant owned by the Committee. The Committee, in turn, would charge District residents a fee for sewer services, the same fee it would charge residents of North Little Rock. The parties also agreed to these terms about services to non-residents of the District:

> The District shall have the right to make charges for connections to the District's trunk sewer lines by residents living outside the boundaries of the District, provided that such residents and the Committee have entered into an agreement with regard to services to be rendered to such residents by the Committee or the Committee has otherwise approved such charges.

McCain-Hwy. 161, LLC owns property outside the District. When it began developing that property, it tied into the District's sewer lines. But McCain and the District could not agree on a connection fee. The Committee eventually decided on a $45,000.00 fee for the landowners' entire tract, which is approximately thirty-eight acres. McCain was willing to pay that amount, but the District refused to accept it. The District contended that

McCain owed a $77,000.00 fee for tying in the development on approximately one-third of this property or a $113,000.00 fee for the entire tract.

McCain then filed this action. It sought a declaratory judgment that the Committee had the final say about the connection fee under the District/Committee agreement. The circuit court rejected the District's initial contention that McCain had no standing to sue under the District/Committee agreement. The court then entered summary judgment for McCain, holding that the agreement unambiguously gave the Committee the ultimate right to decide the connection fee for non-residents. The court ordered the District to accept the Committee-approved amount ($45,000.00) from McCain. The District has appealed.

## II.

For reversal, the District first renews its no-standing argument. We review this issue of law de novo. *Farm Bureau Ins. Co. of Arkansas, Inc. v. Running M Farms, Inc.*, 366 Ark. 480, 485, 237 S.W.3d 32, 36 (2006). The circuit court concluded that McCain-Hwy. 161, LLC was a third-party beneficiary of the District/Committee agreement, and that ruling was right.

Our law presumes that parties contract only for themselves. *Elsner v. Farmers Ins. Group, Inc.*, 364 Ark. 393, 395, 220 S.W.3d 633, 635 (2005). The District and the Committee made their agreement about sewer services approximately fifteen years before McCain was even formed. And the District/Committee agreement does not name McCain or say that it was intended to benefit non-parties. The agreement, however, sufficiently described a class of which McCain is a member — non-residents of the District whom the District and the Committee were willing to serve. *Ibid.*; *Perry v. Baptist Health*, 358 Ark. 238, 245-48, 189 S.W.3d 54, 58-60 (2004). The opportunity for sewer service arises out of this agreement and benefits that class of non-residents. This benefit is more than incidental; sewer services are an essential of modern urban life. The District was willing to serve McCain, and indeed has done so on an interim basis before and during this litigation. McCain sought no damages. It sought only an injunction requiring the District to accept the connection fee set by the Committee. Considering all these circumstances, we hold that McCain was a beneficiary of the non-resident provision of the

District/Committee agreement and thus had standing to litigate which entity had the power to set the connection fee under that agreement.

McCain had standing for another reason. It sought a declaratory judgment. The governing statute contains a broad standing provision: "[a]ny person interested under a . . . written contract . . . or whose rights, status, or other legal relations are affected by a . . . contract . . . may have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status, or other legal relations thereunder." Ark. Code Ann. § 16-111-104 (Repl. 2006). We liberally construe our Declaratory Judgment Act. Ark. Code Ann. § 16-111-102(c) (Repl. 2006); *Hardy v. United Services Auto. Ass'n*, 95 Ark. App. 48, 50, 233 S.W.3d 165, 167 (2006).

McCain's legal relations with the District were affected by the District/Committee agreement. The Committee and the District were able and willing to serve all the development on this tract of land. But how much McCain must pay to tie into the District's sewer lines depends on who has the last word about that fee under the agreement. Construing the Act liberally, we hold that McCain had standing to have the circuit court declare what this agreement means for non-District residents even if McCain was not a third-party beneficiary. *Cf.*, *Stilley v. James*, 345 Ark. 362, 372-73, 48 S.W.3d 521, 528 (2001) (judgment creditors had standing under the Act to determine their rights under an indemnity agreement to which they were not parties, but which was created solely to benefit them).

III.

The District argues second that, as a suburban improvement district, it must charge a fee for using its sewer system. *See generally* Ark. Code Ann. §§ 14-92-205 to 14-92-235 (Repl. 1998 & Supp. 2005). The District also notes that it has executed a bond and pledged collected fees — such as the disputed fee here — for repayment. All these points are correct, but provide no basis for reversing the judgment. The District will collect a fee from McCain for tying into the sewer line. The fighting issue is who gets to decide the amount of that fee. Neither the statute nor the District's bond obligations resolve that issue.

IV.

Third, and on the merits, the District challenges the circuit court's construction of the District/Committee agreement as unreasonable. Arguing that it never intended to give the Committee a veto over connection fees for non-residents, the District says that genuine issues of material fact exist about what fee is reasonable. It points to the District assessor's determination that $77,000.00 was a fair and reasonable fee for giving the developed part of the tract access to the sewer system.

The District's arguments, however, run into the clear words of its agreement with the Committee. That agreement is not ambiguous, and the District does not argue that it is. The meaning of an unambiguous contract is a question of law for the circuit court. *Kremer v. Blissard Management & Realty, Inc.*, 289 Ark. 419, 421, 711 S.W.2d 813, 815 (1986). Thus we must glean the District's intentions from the District/Committee agreement alone. After our de novo review, we agree with the circuit court's reading of the parties' plain words. The District maintained the right to "make charges" for non-residents' connections to the District's trunk sewer lines, "provided that" the Committee and the non-residents had agreed about the Committee's services or "the Committee has otherwise approved [the District's] charges."

■ The agreement authorizes the District to charge a connection fee to non-residents subject to the Committee's approval of that fee. This is indeed a veto of sorts, as the Committee contends. But in construing this provision about tie-in fees for non-District residents we must consider the parties' whole agreement. *Floyd v. Otter Creek Homeowners Ass'n*, 23 Ark. App. 31, 35-36, 742 S.W.2d 120, 123 (1988). Their agreement reveals that the price the District paid for benefitting from the Committee's treatment plant was to give the Committee substantial control of the whole sewer system. The Committee services and maintains all the lines, approves all connections, and collects fees from District residents and non-residents for using the system. It is not unreasonable for the Committee to also have the last word about the connection fee for a non-District resident, such as McCain, who wants access to the District's lines, and through them, to the Committee's treatment plant. The parties agreed that the District gets the tie-in fee; but they also agreed that the Committee gets to make the ultimate decision about the amount of that fee.

We agree with the circuit court's remarks at the end of the summary judgment hearing. The agreement "just seems so clear." And the District must press any disagreement it has about the amount of a connection fee for any non-resident with the Committee, recognizing that the parties' agreement gives the Committee the final word.

Affirmed.

BIRD and HEFFLEY, JJ., agree.