Cite as 2023 Ark. App. 29

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-20-509

| | |
|---|---|
| THE AGRED FOUNDATION<br><br>APPELLANT<br><br><br>V.<br><br><br>FRIENDS OF LAKE ERLING<br>ASSOCIATION<br><br>APPELLEE | Opinion Delivered February 1, 2023<br><br>APPEAL FROM THE LAFAYETTE<br>COUNTY CIRCUIT COURT<br>[NO. 37CV-16-16]<br><br><br>HONORABLE CARLTON D. JONES,<br>JUDGE<br><br>AFFIRMED |

## ROBERT J. GLADWIN, Judge

This appeal arises from an order disposing of competing motions for summary judgment in favor of appellees, Friends of Lake Erling Association ("FOLEA"). Accordingly, The AGRED Foundation d/b/a American Gamebird Research Education and Development Foundation, Inc.'s ("AGRED's"), motion to dismiss based on lack of standing and cross-motion for summary judgment were dismissed with prejudice, and FOLEA's motion for summary judgment was granted. AGRED filed a timely notice of appeal. We affirm the circuit court's order granting summary judgment in favor of FOLEA.

I. *Background Facts*

This matter concerns the use and regulation of Lake Erling, an approximately 7,100-acre reservoir located in Lafayette County, Arkansas. Lake Erling was constructed in 1956

by International Paper Company ("IP") as a source of water for its nearby mill. Some of the land beneath Lake Erling was owned by the federal government, so the United States and IP entered into an act of exchange (the "Act") on June 23, 1952. Under the Act, IP granted the United States a flowage easement over IP-owned land within the greater Bayou Bodcau Reservoir Project in Louisiana and Arkansas in exchange for the right to flood the government's land under yet-to-be-constructed Lake Erling. Accordingly, the United States conveyed to IP a perpetual easement "for its construction of a dam and reservoir to supply fresh water for industrial purposes."

Importantly, the government's conveyance to IP came with certain reservations and conditions. The Act required IP to (1) place no restrictions on the public use of Lake Erling; and (2) allow public access to Lake Erling via its land. Specifically, the Act states:

> It is understood and agreed that International Paper Company shall place no restrictions upon the public use of the water area of the industrial water supply reservoir located on its lands either for flood control, recreational, wild life, or fishing and hunting purposes; and that it will permit and grant access over its lands adjoining the water area over and through routes to be agreed upon and designated by the Company and the United States.

From the time IP entered into the Act on June 23, 1952, until November 1, 2013, IP never charged for, or objected to, the public's use of Lake Erling or restricted adjoining landowners from constructing structures to access the lake.

On November 1, 2013, IP conveyed its interest in the land underneath Lake Erling to AGRED. Under the terms of the conveyance, AGRED agreed to assume all of IP's obligations and duties imposed by the Act. However, after AGRED assumed ownership of

Lake Erling, it began charging various fees to access the lake. The two lake-use policies challenged in this litigation are (1) a requirement to purchase a boat decal from AGRED in order to launch motorized boats on Lake Erling; and (2) a requirement to purchase an annual permit for boat docks and other structures on the lake. Moreover, AGRED and the United States entered into a memorandum of understanding ("Memorandum") regarding a designated route of public access to the lake. The parties stipulated that the boat-launch ramp at one end of the lake would continue to be a route of public access to Lake Erling and agreed that designating the ramp as a route of public access fulfilled AGRED's designation obligations under the Act. The Memorandum, however, did not address charging fees for access to or use of the lake.

## II. *Procedural History*

On March 8, 2016, FOLEA brought suit against AGRED in the Lafayette County Circuit Court, seeking declaratory and injunctive relief. FOLEA is a nonprofit organization dedicated to preserving the public's right to access Lake Erling. Membership consists of individuals who own or rent real property adjacent to Lake Erling and for decades have enjoyed the unrestricted right to boat, hunt, fish, and engage in recreational activities on the lake. FOLEA sought to prevent AGRED from charging fees related to the use of Lake Erling and sought a declaration of the parties' rights under the Act. FOLEA also moved for a preliminary injunction to prevent AGRED from charging fees. In response, AGRED filed a motion to dismiss for failure to state a claim arguing that FOLEA lacked standing to bring the action.

On June 3, 2016, the circuit court held a hearing on FOLEA's preliminary injunction and AGRED's motion to dismiss. The court announced its ruling from the bench, finding that FOLEA had standing for the following reasons: (1) its status as a nonprofit corporation; (2) the nature of the action being one for declaratory judgment; and (3) it considered its members to be third-party beneficiaries under the Act. Turning to the merits, the circuit court found that the language of the Act provides the public the right to unrestricted access to Lake Erling. Accordingly, the court found that the fee-generating programs instituted by AGRED constituted "restrictions" and enjoined AGRED from taking actions that restrict the public's access to the lake.

Next, both parties filed competing motions for summary judgment. FOLEA argued it was entitled to judgment as a matter of law as a result of the circuit court's ruling that the Act secured its members an unrestricted right to access Lake Erling. In contrast, AGRED renewed its objection to FOLEA's standing to bring suit and argued that its fee-generating programs were not prohibited by the Act because the agreement expressly provides it "complete control and management of Lake Erling." AGRED also argued that there exists no private right of action for FOLEA as a third-party beneficiary of the Act.

The circuit court granted FOLEA's summary-judgment motion on September 22, 2016. Once again, the court held that the Act prohibited IP (and now AGRED) from placing restrictions on the public's use of the lake for the purposes stated in the agreement (recreational, wildlife, or fishing and hunting purposes) and enjoined AGRED from charging

a fee for operating a motorized boat on the lake or requiring boats to display AGRED's boat decal.

AGRED appealed to this court on October 13, 2016, and FOLEA cross-appealed. On October 4, 2017, we dismissed the appeal because the circuit court's summary-judgment order did not dispose of all FOLEA's claims; thus, it was not a final, appealable order. *See AGRED Found. v. Friends of Lake Erling Ass'n*, 2017 Ark. App. 510. Specifically, the circuit court failed to address whether AGRED's requirement that adjacent landowners obtain a permit and pay a fee for structures on Lake Erling violated the Act.

In the meantime, AGRED filed a lawsuit in federal court against the United States Army Corps of Engineers ("USACE") that sought a declaratory judgment stating that fee-generating programs, such as the ones it instituted on Lake Erling, are not prohibited under the Act. *See AGRED Found. v. U.S. Army Corps of Eng'rs*, No. 4:18-cv-4136, 2020 WL 2114928 (W.D. Ark. May 4, 2020). The United States District Court for the Western District of Arkansas granted USACE's motion to dismiss, holding that AGRED lacked standing pursuant to Article III, Section 2, of the United States Constitution; thus, the court lacked subject-matter jurisdiction. AGRED appealed the district court's decision, and the Eighth Circuit Court of Appeals affirmed. *See AGRED Found. v. U.S. Army Corps of Eng'rs*, 3 F.4th 1069 (8th Cir. 2021).

While the federal case was pending, AGRED filed a second and renewed motion for summary judgment in circuit court. In response, FOLEA moved to supplement the circuit court's prior order to address the unresolved issue regarding the permit and fees for lake

5

structures. On April 28, 2019, the circuit court entered its final order granting FOLEA's summary-judgment motion in its entirety and permanently enjoined AGRED from

> charging members of the public for access to Lake Erling, including, without limitation, a fee for launching or operating a motorized boat on Lake Erling, requiring motorized boats on Lake Erling to display a boat decal, or requiring adjacent landowners to obtain a permit and pay a fee to AGRED for structures including docks, piers, and boathouses reasonably necessary for access to Lake Erling.

AGRED filed a timely notice of appeal on June 1, 2020. This appeal followed.

## III. *Standard of Review*

Summary judgment may be granted only when there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Cannady v. St. Vincent Infirmary Med. Ctr.*, 2012 Ark. 369, 423 S.W.3d 548. "Ordinarily, upon reviewing a circuit court's decision on a summary-judgment motion, we would examine the record to determine if genuine issues of material fact exist." *May v. Akers-Lang*, 2012 Ark. 7, at 6, 386 S.W.3d 378, 382. However, when the parties agree on the facts, we simply determine whether the appellee was entitled to judgment as a matter of law. *Hobbs v. Jones*, 2012 Ark. 293, 412 S.W.3d 844. "When parties file cross-motions for summary judgment, as was done in this case, they essentially agree that there are no material facts remaining, and summary judgment is an appropriate means of resolving the case. As to issues of law presented, our review is de novo." *State v. Cassell*, 2013 Ark. 221, at 4–5, 427 S.W.3d 663, 666 (citations omitted). "De novo review means that the entire case is open for review."

*Certain Underwriters at Lloyd's, London v. Bass*, 2015 Ark. 178, at 9, 461 S.W.3d 317, 323 (citations omitted).

> As for interpreting a contract, our standard of review has been stated often:
>
> The first rule of interpretation of a contract is to give to the language employed the meaning that the parties intended. In construing any contract, we must consider the sense and meaning of the words used by the parties as they are taken and understood in their plain and ordinary meaning. The best construction is that which is made by viewing the subject of the contract, as the mass of mankind would view it, as it may be safely assumed that such was the aspect in which the parties themselves viewed it. It is also a well-settled rule in construing a contract that the intention of the parties is to be gathered, not from particular words and phrases, but from the whole context of the agreement.

*Alexander v. McEwen*, 367 Ark. 241, 244, 239 S.W.3d 519, 522 (2006) (internal citations omitted).

## IV. *Points on Appeal*

On appeal, AGRED argues that (1) FOLEA has no standing to bring suit against it, and (2) the Act does not prohibit AGRED from requiring an easement and permit for the use of its land by adjacent landowners or requiring a permit for motorized boats on Lake Erling.

## V. *Discussion*

### A. Standing

First, AGRED argues that FOLEA does not have standing to bring this lawsuit because it is not a party to the Act and does not allege any interest in the property subject to the Act. Specifically, AGRED contends that FOLEA does not allege that AGRED has restricted FOLEA's use of the water area of Lake Erling; thus, FOLEA has no standing to

7

bring suit on behalf of its members or anyone else. In response, FOLEA argues it has standing to prosecute, and its right to do so is supported by (1) the Arkansas Nonprofit Corporation Act, (2) the Arkansas Declaratory Judgment Act, (3) its status as a third-party beneficiary of the Act; and (4) Ark. Code Ann. § 4-28-105 (Supp. 2021), which states that a nonprofit organization may have standing as the representative of its members.

We treat the question of standing to sue as a threshold issue. *See, e.g., Brewer v. Carter*, 365 Ark. 531, 231 S.W.3d 707 (2006). It is fundamental in American jurisprudence that in order to bring a lawsuit against an opposing party, one must have standing to do so. Without standing, a party is not properly before the court to advance a cause of action. *See Hufsmith v. Weaver*, 285 Ark. 357, 687 S.W.2d 130 (1985). We review this issue of law de novo. *Farm Bureau Ins. Co. of Ark., Inc. v. Running M Farms, Inc.*, 366 Ark. 480, 237 S.W.3d 32 (2006).

The circuit court found that FOLEA has standing to pursue this action for several reasons. First, it held that the Arkansas Nonprofit Corporation Act, codified at Ark. Code Ann. §§ 4-28-201 et seq. (Repl. 2016 & Supp. 2021), empowers FOLEA to conduct its affairs as if it were a person. Specifically, the court found that FOLEA represents the interests of its members who own lakefront property and are required to purchase a boat decal for their watercraft and pay an assessment for maintaining a dock on the lake. Second, the court found that FOLEA has standing pursuant to the Uniform Declaratory Judgments Act, codified at Ark. Code Ann. §§ 16-111-101 et seq. (Repl. 2016 & Supp. 2021), which states as follows:

8

Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

Ark. Code Ann. § 16-111-102. Accordingly, the court held that because FOLEA is seeking a construction of the Act and determination of rights—and legal relations thereunder—it has standing because its members have been adversely impacted by the actions of AGRED.

Next, the court held that FOLEA has standing to bring this suit as a third-party beneficiary of the Act because that public's use of Lake Erling was an integral part of the agreement. Last, the court held that FOLEA is vested with the same rights and privileges as a natural person to sue and be sued and therefore has standing to assert those rights as a member of the public at large.

On appeal, AGRED argues that the circuit court's reasons for conferring standing on FOLEA amount to errors of law. Essentially, AGRED argues that neither the Arkansas Nonprofit Corporation Act nor the Uniform Declaratory Judgments Act grant standing to assert a right to property in which a person or entity has no interest. Similarly, AGRED contends that a party seeking a declaratory judgment must have standing demonstrated by a legal, protectable interest in the controversy, which it contends FOLEA does not.

Here, the circuit court held that the issue of FOLEA's standing is controlled by our precedent in *McAlmont Suburban Sewer Improvement District No. 242 v. McCain-Hwy. 161, LLC*, 99 Ark. App. 431, 262 S.W.3d 185 (2007). In 1984, the sewer committee of the City of

9

North Little Rock entered into an agreement with the McAlmont Sewer Improvement District to provide sewer services. The parties agreed that the district would connect its sewer lines to a nearby treatment plant owned by the city, which would, in turn, charge residents of the district a fee. The parties' contract expressly contemplated future development outside the district. *Id.* at 432, 262 S.W.3d at 186. Subsequently, McCain-Hwy. 161, LLC ("McCain"), developed property outside the district and tied into the sewer lines. A dispute arose over the connection fee, and the district and the city disagreed on the amount of the fee. As a result, McCain brought an action seeking a declaratory judgment of its rights granted by the agreement. The district objected, arguing—as AGRED does here—that McCain lacked standing to sue under the agreement between the district and the city. The circuit court overruled the district's objection and conferred standing on McCain.

The district appealed, and this court affirmed, holding that the third party was intended to benefit from the agreement; thus, McCain could enforce its terms through injunctive relief. *Id.* at 433–34, 262 S.W.3d at 189. Furthermore, we found that McCain had standing based on the language of the Uniform Declaratory Judgments Act, which is construed liberally. Specifically, this court held as follows:

> McCain's legal relations with the District were affected by the District/Committee agreement. The Committee and the District were able and willing to serve all the development on this tract of land. But how much McCain must pay to tie into the District's sewer lines depends on who has the last word about that fee under the agreement. Construing the Act liberally, we hold that McCain had standing to have the circuit court declare what this agreement means for the non-District residents even if McCain was not a third party beneficiary.

10

*Id.* at 434, 262 S.W.3d at 187–88.  Here, FOLEA's members' legal relations with AGRED are affected by the Act.  Additionally, there is a present controversy because AGRED has instituted fee-generating programs, despite the public enjoying unrestricted access to Lake Erling for decades.  Therefore, we agree that the issue of standing is controlled by *McAlmont*.

Additionally, while AGRED asserts that FOLEA has no right to sue on behalf of its members, this argument has no merit.  Arkansas Code Annotated section 4-28-105 gives a nonprofit organization standing to sue in its name based on the interest of its members.  It states as follows:

> (a)  A nonprofit organization may, it its own name, institute, defend, intervene, or participate in a judicial, administrative, or other governmental proceeding or in an arbitration, mediation, or any other form of alternative dispute resolution.

> (b) A nonprofit organization may, in its own name, assert a claim on behalf of its members if:

> (1) One (1) or more members of the nonprofit organization have standing to assert a claim in their own rights;

> (2) The interest the nonprofit organization seeks to protect are germane to its purpose; and

> (3) Neither the claim asserted nor the relief requested requires the participation of its members.

FOLEA's members have standing to bring a legal action; the interest FOLEA is seeking to protect is clearly germane to the organization's purpose; and while a FOLEA member could certainly bring a claim against AGRED, the relief requested does not require the participation of individual members.  Thus, the requirements of Arkansas Code Annotated section 4-28-105 are satisfied.

11

Accordingly, we find that FOLEA has standing pursuant to the Uniform Declaratory Judgments Act as well as Arkansas Code Annotated section 4-28-105, which gives it standing to sue on behalf of its members.

### B. Restrictions on Public Use of Water Area

Next, AGRED maintains that the Act does not prohibit AGRED's fee-generating programs; thus, the circuit court should have denied FOLEA's summary-judgment motion. Moreover, AGRED asserts that the circuit court's ruling contradicts the provision of the Act that grants it "complete control and management" of the lake.

In response, FOLEA argues that the Act clearly grants the public unrestricted use of the water area of Lake Erling, which includes the right to operate a motorized boat and construct boat docks and other means of assistance to exercise their right to access the lake. FOLEA contends that the contractual provision granting the public unrestricted access to the lake is consistent with the provision granting IP (and now AGRED) the right to control and manage Lake Erling "to insure a reasonable and sufficient fresh water supply." It argues, however, that even if the provisions are in conflict, the circuit court would have reached the same conclusion because courts are to "accord considerable weight to the construction" of the agreement given to it by the parties, as evidenced by their subsequent acts and conduct. FOLEA contends that the nearly sixty-year peaceful coexistence of the public and IP on Lake Erling speaks volumes when interpreting the intention of the parties.

Because the parties filed cross-motions for summary judgment, they have essentially agreed that there are no material facts remaining, and summary judgment is an appropriate

means of resolving this case. *See Shriner Hosps. for Children v. First United Methodist Church of Ozark*, 2018 Ark. App. 216, 547 S.W.3d 716.

1. *Motorized watercraft fees and decal program*

Shortly after acquiring IP's interest in Lake Erling, AGRED initiated a fee program that requires anyone seeking to operate a motorized watercraft on Lake Erling to purchase a boat decal sticker. As a result, AGRED erected signs at Lake Erling Park stating that vehicles would be towed at the owner's expense for not displaying AGRED's decals.

On appeal, AGRED cites the language of the Act—giving it the right to complete control and management of the dam and reservoir—and argues that such language necessarily must include the right to impose reasonable regulations and limitations upon the public's use of the lake. In support of this argument, AGRED cites federal case law in which the United States has concluded that fees or other reasonable restrictions do not result in the area no longer being "open to public use." *See Ctr. Hill Defense Fund v. U.S. Army Corps of Eng'rs*, 886 F. Supp. 1389 (M.D. Tenn. 1995); *Liddle v. Corps of Eng'rs of the U.S. Army*, 981 F. Supp. 544 (1996). Additionally, AGRED argues that the Act's requirement that there shall be "no restrictions upon the public use of the water area" of Lake Erling is synonymous with the requirement under the Flood Control Act that water areas shall be "open to public use generally." Specifically, the Flood Control Act provides as follows:

> The water areas of all such projects shall be open to public use generally for boating, swimming, bathing, fishing, and other recreational purposes, and ready access to and exit from such areas along the shores of the project shall be maintained for general public use, when such use is determined by the Secretary of the Army not to be

13

contrary to the public interest, all under such rules and regulations as the Secretary of the Army may deem necessary. . . .

16 U.S.C. § 460(d).

In response, FOLEA asserts that the federal cases cited by AGRED can be distinguished from the facts here because the lakes in both *Center Hill* and *Liddle* were constructed and owned by the U.S. Army Corps of Engineers, whereas Lake Erling never was and is not now, and neither case was governed by an act of exchange. Because *Center Hill* and *Liddle* did not involve a court interpreting a separate agreement, such as the Act, we agree they are distinguishable and therefore do not provide guidance for this court.

Here, the circuit court ruled as follows regarding what constitutes a "restriction" under the Act:

> Merriam-Webster's dictionary defines a restriction as a limitation on the use of enjoyment of property or a facility. And limitation is defined as a limiting rule or circumstance. The assessment of a fee to use or gain access where none had been required heretofore to access a property or a facility is certainly a circumstance which could limit a person's use or enjoyment of the property or facility, in this instance Lake Erling. Simply stated, you may wish to swim, fish, boat . . . on the lake, but you may not use a water craft with a motor unless you pay a fee and display a sticker denoting the payment of a fee is a restriction.
>
> You may have a dock on the lake if you have paid an assessment or face removal of the structure is in this Court's opinion a restriction. It is clear from reviewing the Flood Control Act of 1944 and the Act of Exchange creating Lake Erling that a quid pro quo understanding was made between the United States and IP. IP was to have the use of a valuable public resource, the water from the reservoir for its industrial purposes, and in return was to maintain the resource for the use and benefit of the public with no restrictions.
>
> The provision of no restriction is important to the meaning of the Act of Exchange as the public, the citizens of Lafayette County, the State of Arkansas, and the United States had given valuable consideration for the right to use Lake Erling. For IP or its

14

successors in title to access a fee for the use of the lake would in essence require the public to again pay consideration for the use of the lake.

FOLEA asks this Court to find for it in this cause of action by declaring the Act of Exchange, in the Act of Exchange a right or unrestricted access to the Plaintiff and the public. The Court based upon the conclusions it has reached in addressing the issue of standing in this case agrees with the Plaintiff's analysis that the language of the Act of Exchange provides the right of unrestricted access to the FOLEA members as well as to the public at large.

Subsequently, when granting FOLEA's summary-judgment motion, the court held it was "beyond dispute that the stated purpose for allowing IP to construct this Lake was to provide it a source of water for its nearby paper mill," and in exchange, IP guaranteed the public the right to use the lake without any restriction. Therefore, the circuit court did not consider the provision granting the public unrestricted use of the lake to be at odds with the provision giving IP the right to control and manage its dam, reservoir, and other structures "to insure a reasonable and sufficient fresh water supply to its plant."

It is well established that when construing any contract, we must consider the sense and meaning of the words used by the parties as they are taken and understood in their plain and ordinary meaning. *Singletary v. Singletary*, 2013 Ark. 506, 431 S.W.3d 234. Furthermore, the intention of the parties is to be gathered, not from particular words and phrases, but from the whole context of the agreement.

In construing the Act as a whole, we agree with the circuit court that the Act was an understanding between the parties that IP was to have use of a valuable public resource in exchange for maintaining the resource for the unrestricted use and benefit of the public. AGRED setting forth a requirement that members of the public either pay the fee to operate

15

a watercraft or forfeit their rights to use such on the lake violates the express terms of the Act; thus, we affirm the circuit court's ruling that the motorized watercraft fees and decal program are restrictions and prohibited under the agreement.

2. *Permit and fees for structures on Lake Erling*

AGRED contends that it is not required by the Act to allow adjoining property owners right of private access to the lake or to allow boat docks or other similar structures that adjoining property owners may wish to construct on the lake. Specifically, AGRED requires a permit and payment of fees for any docks, piers, or other similar structures used to access the water area of Lake Erling. On appeal, AGRED maintains that it is not required by the Act to allow the public—adjoining landowners or otherwise—unrestricted access to the lake other than by the public boat ramp agreed upon by AGRED and the United States in the memorandum of understanding.

FOLEA, however, makes the important distinction that the public's right to unrestricted use under the Act is a separate and distinct right from AGRED's obligation to designate a public access point across AGRED-owned land. Pursuant to the language of the Act, they are not one and the same but are two separate requirements; therefore, FOLEA contends AGRED's argument---that designating the park's boat launch ramp as a route of public access satisfied its obligations under the Act---is not only incorrect but irrelevant to this appeal. Finally, FOLEA argues that if this court finds that the language of the Act is ambiguous regarding what is considered a "restriction," considerable weight should be

placed on the undisputed fact that IP placed no restrictions on the construction of boat docks, piers, boat sheds, or sea walls for nearly sixty years.

As quoted above, the circuit court orally declared that having to either pay an assessment or face removal of a dock on the lake is a restriction under the Act. However, because the circuit court's order granting summary judgment to FOLEA failed to address AGRED's implementation of permits and fees for structures on the lake in the first appeal to this court, we remanded for a ruling on the remaining issue. Specifically, we ordered the circuit court to determine whether AGRED could require adjacent landowners to obtain a permit and pay a fee for structures on Lake Erling. On remand, the circuit court entered summary judgment for FOLEA for the reasons set forth in its ruling from the bench on June 3, 2016, including its declaration that having to pay an assessment for having a structure on Lake Erling is a restriction; thus, the court permanently enjoined AGRED from

> charging members of the public for access to Lake Erling, including, without limitation . . . requiring adjacent landowners to obtain a permit and pay a fee to AGRED for structures including docks, piers, and boathouses reasonably necessary for access to Lake Erling.

As discussed above, the government's conveyance to IP came with the express condition that IP would place "no restrictions upon the public use of the water area." While the parties could have narrowed down the definition of a restriction, they chose instead to use all-encompassing "no restrictions" language. Furthermore, while AGRED is correct that the agreement is silent on whether fee-generating programs are prohibited, it is well-established that when uncertainty exists in a contract, we are permitted to look outside the

17

contract to determine the actual intent and conduct of the parties. *Rockefeller v. Rockefeller*, 335 Ark. 145, 980 S.W.2d 255 (1998). In determining the intention of the parties, appellate courts may consider and accord considerable weight to the construction of an ambiguous contract by the parties themselves, evidenced by subsequent acts and conduct. *Id.*

From the 1950s to November 2013, IP did not restrict the public, including adjoining landowners from constructing boat docks, piers, or boat sheds in order to use Lake Erling for the purposes set forth in the Act. No fee was charged, nor was a permit required. Therefore, many of the lake structures that are at risk of being removed have been in existence for decades. We agree that IP's subsequent conduct is convincing evidence of the parties' understanding of the Act. Accordingly, we find no error in the circuit court's ruling that permits and fees for structures on Lake Erling are restrictions under the Act and that AGRED is therefore prohibited from requiring adjoining landowners to obtain a permit and pay a fee for structures reasonably necessary to access the lake.

### 3. *Easements to adjoining landowners*

On appeal, AGRED argues that its fee program for granting easements to adjacent owners who want private access to the lake (as opposed to using the designated route of public access contemplated by the Act) is not prohibited under the Act. Before the circuit court, and on appeal, AGRED has characterized the easement program and the land-use permits for structures as one and the same. Specifically, it argues that both programs are properly characterized as granting easements to adjacent landowners and, further, that it is not required to allow anyone access to the lake other than by the public route designed by

AGRED and the United States. Accordingly, AGRED maintains that the issue of private access to the lake by adjoining landowners is a question of property law that must be determined on a case-by-case basis between AGRED and the property owners.

In response, FOLEA argues that this case does not involve an issue about an "access route" over AGRED's property to get to Lake Erling but rather AGRED's permit and fee for boat docks and similar structures. We agree. FOLEA's declaratory judgment sought an order from the circuit court declaring that the Act entitles the public to an unrestricted right to Lake Erling in its entirety. However, FOLEA only sought to enjoin AGRED from (1) charging a fee and requiring a permit to operate a motorized watercraft and (2) requiring the same of adjoining landowners to construct and maintain structures on Lake Erling. Specifically, FOLEA's objection is to AGRED's "annual land use permit," which requires landowners to pay an annual fee for structures on the lake.

On appeal, AGRED contends that the circuit court erred in granting FOLEA's summary-judgment motion with respect to AGRED's program for granting easements. The circuit court, however, made no such ruling. The orders on appeal focused only on the public's right to unrestricted access under the Act, not the separate obligation of AGRED to grant and permit access routes across its land to get to Lake Erling. The failure to obtain a ruling on an argument precludes appellate review because there is no lower court order on the issue for this court to review. *Neal v. Sparks Reg'l Med. Ctr.*, 2012 Ark. 328, 422 S.W.3d 116. Furthermore, we will not presume a ruling from the circuit court's silence. *TEMCO Constr., LLC v. Gann*, 2013 Ark. 202, 427 S.W.3d. 651. Therefore, because the circuit court

did not issue a ruling regarding routes of private access across AGRED's land, this argument is not preserved for consideration on appeal. *See Neal*, 2012 Ark. 328, 422 S.W.3d 116.

VI.  *Conclusion*

We find that FOLEA is entitled to declaratory judgment as a matter of law and affirm the order granting summary judgment to FOLEA.

Affirmed.

ABRAMSON and BROWN, JJ., agree.

*Bell & Boyd, PLLC*, by: *Michael W. Bell* and *Karen Talbot Gean*, for appellant.

*McMath Woods, P.A.*, by: *Samuel E. Ledbetter* and *Sarah C. Jewell*; and *PPGMR Law, PLLC*, by: *G. Alan Perkins*, for appellee.